719 So.2d 437 (1998)
Robert J. CARBON, individually and on behalf of his minor daughter, Jennifer Carbon
v.
ALLSTATE INSURANCE COMPANY.
No. 97-C-3085.
Supreme Court of Louisiana.
October 20, 1998.
Rehearing Denied November 25, 1998.
*438 Christopher E. Lawler, James E. Ryan, Donovan & Lawler, Metairie, for Applicant.
Daniel A. Cavell, Camille a. Morvant, II, Peltier, Morvant & Cavell, Thibodaux, for Respondent.
VICTORY, Justice.[*]
We granted a writ of certiorari in this case to determine if the lower courts erred in excluding evidence tending to show whether Jennifer Carbon, a 15-year-old girl severely injured in an automobile accident, was a "resident" entitled to coverage under the uninsured/underinsured motorist provisions of her father's automobile and umbrella policies with Allstate Insurance Company ("Allstate").

FACTS AND PROCEDURAL HISTORY
On May 20, 1992, Jennifer Carbon was injured in a one-car automobile accident just outside of New Braunfels, Texas. A guest passenger in the automobile, Jennifer was propelled through the front windshield during the accident, sustaining several injuries, including a closed head injury.
Jennifer's parents, Linda Franz and Dr. Robert Carbon, divorced in 1988. Her father remained in Thibodaux, Louisiana and Jennifer lived with her mother or other relatives from 1988 until the accident in May of 1992, first in Shreveport and then in New Braunfels. However, pursuant to a consent judgment rendered in the Seventeenth Judicial District Court in Lafourche Parish, the care, custody, and control of Jennifer was awarded jointly to both parents, with the judgment noting "[t]he principal residence of the minor child shall be with the mother." Although Dr. Carbon was entitled to regular visitation rights under the agreement[1], from 1988 until the time of the accident, Jennifer attended school in Shreveport and New Braunfels and stayed with her father in Thibodaux on only a few occasions. According to Dr. Carbon's proffered deposition, she visited him at least once during a school holiday during the 1988-89 school year, during the Christmas holiday in 1989, in June of 1989, during the Thanksgiving holiday in 1990, and for one month during the summer of 1991.
In July of 1992, Dr. Carbon made a claim for Jennifer's injuries on two insurance policies he had purchased from Allstate. Both policies limited coverage to "insured persons," who were defined as "[y]ou and any resident relative." The policies defined a "resident" as follows:
"Resident"means the physical presence in your household with the intention to continue living there. Unmarried dependent children, while temporarily away from home will be considered residents if they *439 intend to continue to live in your household.
Allstate sent notice to Dr. Carbon rejecting his claim for Jennifer's injuries, contending that Jennifer was not an insured person under the policies because she was not a "resident" of Dr. Carbon's household, as defined by the policies, at the time of the accident.
Dr. Carbon subsequently filed this lawsuit on behalf of himself and his daughter seeking recovery under the uninsured/underinsured motorist provisions of his policies in addition to other damages and attorneys' fees.
Prior to trial, plaintiffs filed a motion in limine in which they sought to exclude evidence regarding the divorce proceedings of Linda Franz and Dr. Robert Carbon, as well as evidence showing both where Jennifer physically lived prior to the accident and where she intended to live. The trial court granted plaintiffs' motion in limine on April 4, 1996. In its written reasons for judgment the court concluded Allstate's use of the word "they" in its definition of resident was ambiguous, and any insurance policy provision which allowed a 15-year-old child to determine her own residence violated public policy. Therefore, the court looked to the intent of the parties who controlled where the child would reside. That intent, according to the trial court, was reflected in the court's ruling in the custody proceedings. Therein, the court had ruled Jennifer was to be subject to joint custody by Carbon and Franz. The trial court held a child subject to a joint custody decree which provides for cotutorship has two legal residences as a matter of law. Thus, according to the trial court, Jennifer's residence with her father was established as a matter of law, and evidence of the intent of the parties indicating otherwise was irrelevant. Under the court's ruling, Jennifer was a covered "resident" under her father's Allstate policies. The appellate court denied Allstate's writ application contesting the trial court's ruling, noting Allstate could proffer the excluded evidence and present its argument on appeal after the trial.
At trial, the jury made a substantial award to Dr. Carbon for Jennifer's medical expenses and personal injuries, which was subject to a reduction for Jennifer's contributory fault and the limits under the policies. The defendant proffered evidence, including Dr. Carbon's deposition and correspondence between Dr. Carbon and Jennifer, which Allstate claims indicates Jennifer's intent to live with her mother. (Allstate would have introduced this evidence had the trial court not granted the plaintiffs' motion in limine.)
On appeal, the First Circuit affirmed. Carbon v. Allstate Ins. Co., 96-2109 (La.App. 1st Cir. 9/23/97), 701 So.2d 462. Although the court did not agree with the trial court's finding that the word "they" in the second sentence of the policies' definition of "resident" was ambiguous, the court found the policies' definition of "resident" violated public policy because it predicated coverage on the intent of a minor as to her own residence. Absent a valid policy definition of "resident," the court concluded that as a matter of law, the custody judgment provided the legal residence of Jennifer was with both parents, and that the plan of visitation, even though never fully implemented, showed an intent of the court and the parents as to where Jennifer would reside. As such, the court held the trial court did not err in granting plaintiffs' motion in limine or in finding Jennifer was a resident of her father's household as a matter of law. We granted Allstate's writ of certiorari. Carbon v. Allstate Insurance Co., 97-3085 (La.3/27/98), 716 So.2d 365.

LAW AND DISCUSSION
An insurance policy is a contract between the parties. It should be construed by using the general rules for the interpretation of contracts as set out in the Civil Code. Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 93-0911, p. 5 (La.1/14/94), 630 So.2d 759, 763; Smith v. Matthews, 611 So.2d 1377, 1379 (La.1993). The role of the judiciary in interpreting insurance contracts is to ascertain the common intent of the parties to the contract. Louisiana Ins., id.; La. C.C. art.2045. A court is to determine the intent of the parties to an insurance contract "in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words *440 have acquired a technical meaning." Louisiana Ins., id.; Breland v. Schilling, 550 So.2d 609, 610 (La.1989). An insurance policy should not be interpreted in an unreasonable manner, such as to enlarge coverage beyond what is reasonably contemplated by the terms of the policy. Lindsey v. Poole, 579 So.2d 1145, 1147 (La.App. 2nd Cir.1991) (citing Zurich Ins. Co. v. Bouler, 198 So.2d 129 (La.App. 1 st Cir.1967)). Additionally, "[a]bsent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume." Louisiana Ins., 93-0911 at 6, 630 So.2d at 763; see also Oceanonics, Inc. v. Petroleum Distributing Co., 292 So.2d 190, 192 (La.1974).
Both of the policies purchased by Dr. Carbon provide coverage to "insured persons," which include "any resident relative." As noted earlier, the policies define a "resident" as follows:
"Resident" means the physical presence in your household with the intention to continue living there. Unmarried dependent children, while temporarily away from home will be considered residents if they intend to continue to live in your household.
Under this definition there are two ways by which a person may be covered as a "resident" under the policy. The first sentence defines a resident as one who has a physical presence in the household of the insured plus the intention to continue living there. The second sentence states that an unmarried dependent child, although temporarily away from home, is covered if he or she intends to continue living in the household of the insured. The plain meaning of these sentences is clear and unambiguous. A relative will be considered a "resident" only if he has a physical presence in the household plus the intent to continue living in that household at the time of the accident. However, an unmarried dependent child will nonetheless be considered a "resident," provided he was temporarily away from the home but intended to continue to live in the insured's home. The plain language employed, as well as the use of the word "continue" in both sentences, mandates this interpretation.
Because this provision is not ambiguous, Allstate is entitled to use its definition of "resident," agreed to by both parties, to limit its coverage as long as the definition does not conflict with either statutory law or public policy. Louisiana Ins., 93-0911 at p. 6, 630 So.2d at 763. The requirement of physical presence in the household clearly does not violate any statutory law or public policy. No Louisiana statute forbids insurers from limiting coverage to relatives of the insured who physically reside in or are only temporarily away from the insured's household. Additionally, in cases where the insurance policy itself had no definition of "resident," several courts have looked at a person's physical presence in the insured's household as a factor to be considered in determining whether that person was a covered "resident" under an insurance policy. See, e.g., Mobley v. State Farm Mut. Auto. Ins. Co., 28,357 (La.App. 2nd Cir. 5/8/96), 674 So.2d 1117 (13-year-old girl who had not spent the night in her father's house in nine years denied coverage under policy providing coverage to those "who live[] with you."); Chapman v. Allstate Ins. Co., 306 So.2d 414 (La. App. 3rd Cir.1975).
Thus, under the policy, in order for Jennifer Carbon to be a "resident," plaintiffs must first establish that Jennifer meets the "physical presence" requirement contained in the definition, i.e., that she was physically present in the Carbon home in Thibodaux to such a degree that she was considered to be "living there." (How else could one "continue living there" unless they were already living there?) Unless the jury was convinced that Jennifer met the "physical presence" requirement contained in the first sentence of the definition (or that she was physically present in the home to such a degree as to be able to "continue to live" there, but was temporarily away from home per the second sentence of the definition), there would be no need to address the second requirement, i.e., Jennifer's intent. Based on the proffered evidence by Allstate, there is clearly a contested issue as to whether Jennifer can meet the "physical *441 presence" requirement and Allstate should have been allowed to present its proffered evidence to the jury for resolution of the issue.
We turn now to whether the requirement that a relative have the intent to continue to live in the insured's household violates any statute or public policy. The lower courts found the intent requirement violated public policy in this case because they found the policy allowed the intent of a 15-year-old girl to determine her residency. Specifically, the trial court found that "to implement an insurance policy provision that lets a fifteen ... year old child decide where it wants to reside is against public policy." Similarly, the court of appeal found that it would violate public policy for coverage to be dependent on the intent of a minor as to whether he wanted to reside with his parents.[2]
We disagree with the lower courts. Policies of insurance using almost the identical definition of "resident" have been in existence for many years and do not violate the public policy of this state. In fact, years ago this Court injected an "intent" requirement into insurance policy definitions of "resident" even in policies which did not specifically define "resident." Bearden v. Rucker, 437 So.2d 1116 (La.1983). Since then, courts of appeal have routinely used Bearden's intentbased definition of residency in cases where residency was undefined and in cases where the policy specifically used "intent" in the definition. See e.g., Prudhomme v. Imperial Fire & Cas. Ins., 95-1502 (La.App. 3rd Cir. 4/3/96), 671 So.2d 1116; Miley v. La. Farm Bureau Cas. Ins. Co., 599 So.2d 791 (La.App. 1 Cir.), writ denied, 604 So.2d 1313 (La.1992) (In case involving same policy definition of resident as case at bar, court held "[t]he real test is whether the absence of the party of interest from the household of the alleged insured is intended to be permanent or only temporaryi.e., whether there is physical absence coupled with the intent not to return." (citing Bearden)). Merely because in a few instances the intent of a child may not be easily proven or the child may be too young to legally form intent, does not make this standard definition of "resident," agreed to by Dr. Carbon and Allstate, against public policy.
By use of the word "intent," the definition of "resident" requires more than proof of a 15 year old's preference as to where he or she will reside. Black's Law Dictionary defines "intent" as "a state of mind in which a person seeks to accomplish a given result through a course of action." As a 15-year-old there is no doubt that Jennifer is old enough to form intent. In fact, in criminal cases, minors who are tried as adults can be *442 shown to have formed specific or general intent required for the commission of a crime.
Requiring a finding of intent to remain in a certain household as a predicate to insurance coverage does not, as the trial court asserts, allow this teenager to determine where she will reside. Giving credence to the unmarried dependent child's intent, as we have defined it, merely determines insurance coverage. It does not violate public policy for an insurance company to hinge its coverage of relatives of the insured on the facts of their physical presence in the insured's house and their intent to continue to live there instead of on the determination of their residence as written in a custody judgment. This is especially true in the case, as here, of a custody judgment giving substantial visitation rights to one parent which were not fully effectuated. To hold otherwise would require us to find that it is the public policy of this state that all unmarried dependent children of the insured subject to a custody agreement or judgment be covered under an insurance policy as insureds regardless of whether they, in fact, have ever had any physical presence in the insured's home.
Furthermore, we believe that the resolution of the physical presence requirement will frequently resolve the intent issue as well, for in many cases the minor will be too young to have formed any intent. Further, in this case where Allstate claims to have evidence by way of correspondence that Jennifer intended to stay with her mother, it might well be determined by the jury that her occasional visits with her father constitute sufficient physical presence in her father's house to cover her as a resident; she also must have intended to continue it, for we are aware of no evidence to suggest her intent to upset the status quo.

CONCLUSION
Since Allstate's definition of "resident" in the two insurance policies at issue in this case violates neither a statute nor the public policy of Louisiana, the trial court erred in refusing to apply this definition of "resident," and in granting plaintiffs' motion in limine. The policies' definition of "resident," rather than merely the terms of the custody judgment, must be used to determine whether Jennifer is a covered resident who is entitled to recovery under the two policies. Louisiana Ins., supra. Therefore, evidence proffered by Allstate which related to Jennifer's actual living arrangements and intent prior to the accident is relevant. La. C.E. art. 401.
Because of the pre-trial granting of plaintiffs' motion in limine, all evidence regarding Jennifer's living arrangements and intent prior to the accident was submitted by the defendant, Allstate, in the form of a post-trial proffer. Thus neither the plaintiffs nor the defendants have had a chance to present evidence of these issues to the fact finder, which is the jury in this case.[3] The jury in this case was never given the opportunity to decide whether Jennifer was a covered "resident" under the two Allstate policies. Therefore, this case must be remanded for a new trial so that a jury may address that issue, as well as the other issues presented by the facts of this case.

DECREE
The judgment of the court of appeal is reversed and the case is remanded to the trial court for a new trial.
REVERSED AND REMANDED.
CALOGERO, C.J., and JOHNSON and KNOLL, JJ., dissent and assign reasons.
CALOGERO, Chief Justice, dissenting.
I disagree with the majority's conclusion that Allstate's definition of resident does not violate public policy under these circumstances. According to Allstate's definition, residency hinges upon an unemancipated minor's intent to continue living in her father's household. This conflicts with the Civil Codes's emphasis on awarding joint custody when it is in the best interest of the child. See La. Civ.Code arts. 131 & 132. It further *443 conflicts with the civil law's strong emphasis on family borne out in Civil Code article 218, which provides that "[a]n unemancipated minor can not quit the parental house without permission of his father and mother." Accordingly, I respectfully dissent.
JOHNSON, Justice, dissenting.
Robert Carbon and Linda Franz were divorced in 1988. The Seventeenth Judicial District Court (Parish of Lafourche) awarded joint custody of the minor, Jennifer. In my view, Louisiana has recognized that the child of divorced parents is entitled during her minority to "residence" with both parents. See Mobley v. State Farm Mut. Auto. Ins. Co., 28,357 (La.App. 2 Cir. 5/8/96); 674 So.2d 1117. Routinely, district judges order one or the other parent to maintain policies of insurance which cover these minor children, without concern as to which parent's residence is the "primary" residence. Since the legislature has expressed a clear intent with regard to joint custody and dual residency, it would be contrary to that public policy to allow insurers to inquire as to an unemancipated minor's intent with regard to her residence.
For the foregoing reasons, I would affirm the judgments of the trial court and the court of appeal.
KNOLL, Justice, dissenting.
The majority characterizes the policies' definition of "resident" as requiring physical presence. I disagree. The first sentence requiring "physical presence ... with the intention to continue living there" means that physical presence alone is insufficient to establish coverage as a resident relative. A second condition of intent to continue to live there must also be satisfied. See, e.g., Prudhomme v. Imperial Fire & Cas. Ins. Co., 95-1502 (La.App. 3 Cir. 4/3/96), 671 So.2d 1116, writ granted in part (to reorganize the limitations of the insurer's liability), 96-1030 (La.6/7/96), 674 So.2d 987, cited by the majority. Although a half brother had no other home and had lived with his sister for three months before the accident and about a year after, he had articulated an intent that living with his sister was only temporary. Therefore the trial court did not manifestly err in finding him not to be covered under the resident relative expansion clause of the policy.[1]
The second sentence of Allstate's definition: "Unmarried dependent children, while temporarily away from home will be considered residents if they intend to continue to live in your household" must apply to circumstances where there is no physical presence. A dependent child would still be covered under the expansion clause if, despite physical absence, a child intended the absence to be only temporary. The word "continue," then, must refer to the fact that at some time there had been physical presence, and coverage would hinge on the child's intent.
In the instant matter, there was never any doubt that at one time, Jennifer maintained a physical presence in the named insured's household. Thus, at issue here is whether, under the second sentence, or expansion clause of the policy, an insurer can give effect to an unemancipated minor child's intent with respect to residency and thereby preclude coverage under her parent's policy.
The majority points out that in defining "resident," intent has been an important consideration. However, in cases cited by the majority, only an adult's intent was at issue.[2] Those cases have little bearing on this case *444 where the intent of a minor is at issue. Permitting a minor's intent to control in this case could have negative impact in related situations.[3] For example, a run away child who is injured would be returned to his parents pursuant to La.Ch.Code art. 1628 et seq. Subsequently, the parents would be obligated to care for that child pursuant to their alimentary obligations articulated in La. Civ.Code art. 227 and 141.[4] That alimentary obligation is so deeply rooted in our civil law tradition that it is closely linked with the specific authority of a parent to dictate the residence of his child. 1 PLANIOL, CIVIL LAW TREATISE, pt. 1, no. 640 and pt. 2 nos. 1657-1663 (La.St.L.Inst.transl.1959). On that basis, "[a]n unemancipated minor can not quit the parental house without the permission of his father and mother." La. Civ.Code art. 218. Yet, under the majority opinion, insurance protection purchased by the parents could not be used to pay for expenses on account of the child's injuries merely because of the whim of a teenager to "permanently" leave home.
In this case, Jennifer was a legal resident of her father's household by virtue of the joint custody decree.[5] Under the decree, her father was required to maintain a policy of hospitalization insurance affording primary and major medical coverage for Jennifer. He was also required to pay for all of Jennifer's other medical expenses. As part of his overall insurance protection plan, her father maintained a UM and umbrella policy with Allstate. The majority, in giving effect to the whim of a child and the will of a disgruntled former spouse, permits the father to undertake all the financial burdens and yet interferes with his ability to give effect to a contract for his financial protection to which neither the child not the former spouse is a party.
The general policy behind UM coverage is to fill the void created when an injury is inflicted by a motorist who is uninsured, underinsured, or unknown. 12A RONALD A. ANDERSON & MARK RHODES, COUCH CYCLOPEDIA OF INSURANCE LAW § 45:620 (2d ed.1981). Accordingly, Allstate set its premiums, which did not decrease because Jennifer began living with her mother. Obviously, Allstate had already made a business decision that Jennifer's presence or absence would have no effect on its risk beyond what it had anticipated at the time it set the cost of providing insurance for the named insured's family. Allstate, therefore, would not be prejudiced by a determination that Jennifer was covered under her father's policy, and Jennifer's father should be permitted to benefit from the insurance protection.
Perhaps because of the broad protective purposes behind insurance, Louisiana has taken a broad view of who is a covered resident under a policy's expansion clause, such as the one at issue in this case,[6] and a *445 narrow view of who is a resident when a resident would be excluded from coverage under the policy.[7]See WILLIAM S. MCKENZIE & H. ALSTON JOHNSON, III, INSURANCE LAW AND PRACTICE §§ 45-46 (2d ed.1996). In this case, a broad interpretation would extend coverage to Jennifer under her father's policy.
The majority is concerned that finding Jennifer covered under her father's policy
would require us to find that it is the public policy of this state that all unmarried dependent children of the insured subject to a custody agreement or judgment be covered under an insurance policy as insureds regardless of whether they, in fact, have ever had any physical presence in the insured's home.
97-3085, at p. 443. (Emphasis added.) However, Louisiana jurisprudence has recognized that coverage may be precluded when a minor child has never stayed at the insured parent's home. See, e.g., Chapman v. Allstate Insurance Company, 306 So.2d 414 (La.App. 3 Cir.1975); Mobley v. State Farm Mutual Automobile Insurance Company, 28,357 (La.App. 2 Cir. 5/8/96), 674 So.2d 1117, writ denied 96-1402 (La.9/20/96), 679 So.2d 433.
In this case, there has been no suggestion that Jennifer never spent time at her father's house following the divorce. Therefore, I would find that the trial judge did not abuse his discretion in granting the motion in limine excluding non-essential evidence. I would also conclude that the policies' definition of resident is against public policy as applied to minors, given the strong connection between parental authority, alimentary obligations and La.Civ.Code art. 218.
For these reasons, I respectfully dissent.
NOTES
[*] Kimball, J., not on panel. Rule IV, Part 2, § 3.
[1] According to the consent judgment, Dr. Carbon was entitled to visitation with Jennifer every other weekend, every other Wednesday night, and every other year on various holidays. In addition, Dr. Carbon was entitled to have Jennifer one week in the months of June, July and August.
[2] The appellate court relied upon two authorities for its conclusion that a provision making coverage dependant on the intent of a minor is "unlawful". Its reliance, however, is misplaced. As authority for its conclusion, the appellate court first cited La. C.C. art. 218, which states that "[a]n unemancipated minor can not quit the parental house without the permission of his father and mother." However, as properly defined above, intent consists of more than just the unmarried dependant child's preference as to where he or she wants to live. In fact, under the facts of this case, including the evidence proffered by defendants, it appears that Jennifer's preference to not reside with or visit her father to the fullest extent as would be allowed by the custody judgment was with the permission of her mother and the implied permission of her father, who did not seek to enforce his visitation rights. Furthermore, as explained earlier, giving consideration to the 15-year-old's intent as one factor in determining residency does not allow her to "quit the parental house without the permission of [her] father and mother" but merely determines insurance coverage.

The appellate court also relied upon Toca v. Rojas, 152 La. 317, 93 So. 108 (1921), in reaching its conclusion. Toca, quoting Prieto v. St. Alphonsus Convent of Mercy, 52 La.Ann. 631, 27 So. 153 (1900), merely holds that a minor cannot "leave the paternal domicile permanently and select for himself another domicile or residence." Toca, 152 La. at 325, 93 So. at 110. The facts of this case, though, do not involve a minor who tried to establish a residence separate from her parents. Instead, it deals with a minor who merely chose, with the permission of both of her parents, to spend a great majority of her time with one parent despite the terms of a custody judgment. Additionally, Toca dealt with parental responsibility for the acts of a minor child under Articles 237, 2317 and 2318 of the Civil Code. This case merely deals with a definition in an insurance policy which sets out those who are entitled to coverage. Thus, Toca is not authority for finding that Allstate's definition violates the public policy of this state.
[3] A finding that a person is a resident for purposes of an insurance contract is a mixed question of law and fact. Taylor v. State Farm Mutual Auto. Ins., 248 La. 246, 178 So.2d 238 (1965). Thus, it is a question for the fact finder.
[1] He was, nonetheless, held by the intermediate court to be covered under the policy because the sister's leaving her car keys out at night was tacit permission to use her car.
[2] In Bearden v. Rucker, 437 So.2d 1116 (La. 1983), the court determined that an adult woman was an insured resident under her husband's policy despite a legal separation and 9 months of physical separation. In Miley v. La. Farm Bureau Cas. Ins. Co., 599 So.2d 791 (La.App. 1 Cir.), writ denied. 604 So.2d 1313 (La. 1992), the adult wife was not covered under her husband's policy because her moving out with virtually all her belongings and leaving her house keys behind signified her intent to no longer be a resident. In that case, the first sentence of the policy mirrors the first sentence of the policy in the instant matter. See also Prudhotnme v. Imperial Fire & Cas. Ins. Co., 95-1502 (La.App. 3 Cir. 4/3/96), 671 So.2d 1116, writ granted in part (to reorganize the limitations of the insurer's liability), 96-1030 (La.6/7/96), 674 So.2d 987.
[3] The majority notes that a fifteen-year old child has the cognitive ability to form an intent, and that a child's intent is relevant in delinquency matters. But the legislature has specifically provided for juvenile proceedings and punishment where a juvenile's conduct (accompanied by the requisite intent) would have been considered criminal if done by an adult.
[4] Article 227 provides: "Fathers and mothers, by the very act of marrying, contract together the obligation of supporting, maintaining, and educating their children."

When parents divorce, the obligation to provide support continues subject to a court's delegation of proportionate amounts pursuant to La. Civ.Code art. 141, which provides in pertinent part: "In a proceeding for divorce or thereafter, the court may order either or both of the parents to provide an interim allowance or final support for a child based on the needs of the child and the ability of the parents to provide support."
[5] In Louisiana, it is recognized that a person may have more than one residence. See, e.g., Fielding v. Casualty Reciprocal Exchange, 331 So.2d 186 (La.App. 3 Cir.), writ denied, 334 So.2d 217 (La.1976).
[6] In Taylor v. State Farm Mutual Automobile Insurance Company, 248 La. 246, 178 So.2d 238 (La.1965), for example, a minor child who had gone to live with his uncle in another state was considered a resident covered under his father's policy. As there was no showing that the parents were not obligated to continue to support their son, the son's absence was considered only temporary. In Butler v. MFA Mutual Insurance Company, 356 So.2d 1129 (La.App. 2 Cir.), writ denied, 358 So.2d 641 (La.1978), a minor child was covered under the father's policy even though the mother had been awarded custody. The court noted that the child lived in a home owned by the father, who occasionally stayed overnight. The court reasoned that the result was in accord with the intent of the uninsured motorist statute and that including the minor had not increased the risk to the insurer beyond what was contemplated in a family policy. Similarly, a thirty-year old divorced son was covered under his father's policy even though he maintained a separate apartment. Bond v. Commercial Union Assurance Company, 407 So.2d 401 (La.1981)(on Rehearing).
[7] For example, in Dofflemyer v. Gilley, 395 So.2d 403 (La.App. 3 Cir.1981), the court of appeal reversed a jury's finding that the unemancipated minor was a resident of his father's household. The court noted that a determination that the son was a resident would preclude coverage, and pointed to the son's using another address on his W-4 and W-2 forms in support of its conclusion. In Pizzo v. Graves, 453 So.2d 592 (La.App. 5 Cir.), writ denied. 457 So.2d 1181 (La.1984), the court pointed to the mother's affidavit attesting her permission for her minor son to live away from her home in support of its determination that the child was not a resident, thereby concluding that the child was covered under the exclusion clause. In Branam v. Traders & General Insurance Company, 344 So.2d 1073 (La.App. 3 Cir.1977), the son maintained an apartment in Natchitoches where he went to school. Despite his frequent visits home, he was not considered a resident of his father's household where the policy excluded residents from coverage.