732 So.2d 822 (1999)
Douglas J. HARRIS
v.
Larry S. COLA, Assumption Parish Sheriff's Office, Liberty Mutual Insurance Company, and State Farm Mutual Automobile Insurance Company.
Edith Cola
v.
Larry S. Cola, Assumption Parish Sheriff's Department, Liberty Mutual Insurance Company, Douglas J. Harris, and State Farm Mutual Automobile Insurance Company.
Nos. 98 CA 0174, 98 CA 0175, 98 CA 0176.
Court of Appeal of Louisiana, First Circuit.
May 14, 1999.
*823 Russell S. Stegeman, Gretna, La, Peter Borstell, New Orleans, La, for plaintiff-appellee Edith Cola.
Ellen Daigle Doskey and Joseph L. Waitz, Houma, LA, Maurice P. Mathieu, Houma, LA, for defendant-appellee Douglas J. Harris.
Christopher E. Lawler, Metairie, LA, for defendant-appellant Allstate Insurance Company.
Kathleen W. Will, Metairie, LA, for Assumption Parish Sheriff's Office, Liberty Ins. Co., and Larry S. Cola.
Robert L. Marrero, Gretna, LA, for Larry S. Cola.
BEFORE: CARTER, C.J., SHORTESS AND DE LA HOUSSAYE,[1] JJ.
SHORTESS, J.
On July 15, 1994, Larry Cola (Cola), an Assumption Parish juvenile officer, was on his way to dinner in an unmarked vehicle owned by the Assumption Parish Sheriff's Office. Edith Cola, his wife (Mrs. Cola), was a passenger in the vehicle. Cola was making a left turn when he collided with a vehicle operated and owned by Douglas Harris. Three lawsuits resulted, which were consolidated for one trial. In addition to other parties named as defendants, Harris and Mrs. Cola amended their petitions and named Allstate Insurance Company as a defendant.[2] After trial, the trial court found Cola 100% at fault and awarded 1) Harris the sum of $249,131.09 against Cola, but limiting Cola's liability to the amount Allstate was cast for; 2) Mrs. Cola the sum of $162,127.00 against Cola, again limiting liability to only the amount Allstate was cast for; and 3) Harris the sum of $25,000.00 against Allstate.[3] The court later rendered a supplemental and amending judgment in favor of Mrs. Cola against Allstate in the sum of $25,000.00 "under the liability coverage of its policy issued to Larry Cola." The court dismissed Mrs. *824 Cola's claim against Allstate for uninsured/under-insured motorist benefits. Allstate appeals.
Allstate asserts four assignments of error, contending the trial court erred: 1) in expanding the pleadings to allow Mrs. Cola to make a claim under the liability portion of the insurance policy when her petition stated a claim against Allstate as her uninsured motorist carrier; 2) in finding that the policy provided liability coverage for the vehicle owned by the Assumption Parish Sheriff's Office, when the vehicle was not an "insured vehicle" under the policy because it was provided for Cola's "regular use" by the sheriff's office; 3) in relying on an exclusion in the policy to find coverage for the parish-owned vehicle; and 4) in finding the parish-owned vehicle was a "private passenger auto."

EDITH COLA'S JUDGMENT
Mrs. Cola amended her petition to add Allstate as a defendant in her suit. The petition stated Allstate held "a policy of uninsured/underinsured motorist coverage written in favor of Edith Cola and a policy of medical payments insurance coverage." The amended petition went on to state the following:
[I]t is alleged that Allstate Insurance Company was the uninsured/underinsured motorist insurance carrier for the above named petitioner, Edith Cola and had issued a policy of uninsured/underinsured motorist insurance coverage which covered the accident made the subject of this action. The contents of said policy are pleaded herein as set forth in extenso. Allstate Insurance Company is joined herein as a defendant pursuant to the Louisiana Direct Action statute.
Part V of Allstate's insurance policy states, "We will pay damages for bodily injury, sickness, disease or death which an insured person is legally entitled to recover from the owner or operator of an uninsured auto. Injury must be caused by accident and arise out of the ownership, maintenance or use of an uninsured auto." It goes on to explicitly state, "An uninsured auto is not: ... (2) a motor vehicle owned by any federal, state, or local government or agency." Therefore, the policy did not provide coverage for Mrs. Cola under uninsured motorist benefits from Allstate since the court found Cola 100% at fault and the vehicle he was driving was owned by the local parish government's sheriff's office. The court dismissed Mrs. Cola's claim for uninsured motorist benefits against Allstate.
However, the court rendered a judgment in favor of Mrs. Cola against Allstate under the liability portion of the policy. Allstate contends Mrs. Cola never alleged a claim under liability and should not have been granted a judgment.
Mrs. Cola cites her amending petition, which stated that, "The contents of said policy are pleaded herein as set forth in extenso." She maintains recovery is allowed under Louisiana Code of Civil Procedure articles 862 and 1154. She also asserts since the insurance contract was introduced into evidence without objection, the pleadings were enlarged to conform to the evidence, and all causes of actions arising from the contract were therefore asserted.
The trial court initially stated in its summation of the issue:
Well, I was never under the impression that the suit, you know, the testimony, of course, did not directly address which provision of the policy; all of the testimony in the case was about the facts of the accident and damages, and although we had discussions about insurance, the policies went into play, I don't think Allstate was ever on notice that they were being sued for liability in the case. It was always a claim for uninsured motorist. That's the way the defense was presented.
However, the court went on to find,

*825 Well, I think the law is clear that my responsibility as a trial judge is to render a judgment based on the evidence. The fact that something is not specifically mentioned or specifically argued doesn't mean that it's beyond my capability or my authority. I'm not going to have this case come back on something like that.
In Roberson v. Provident House,[4] the supreme court stated,
LSA-C.C.P. Art. 1154 provides in part that "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by to pleading." The general rule as stated by this court in Webster v. Rushing, 316 So.2d 111 (La.1975), is that pleadings may be enlarged by evidence adduced without objection when such evidence is not pertinent to any other issue raised by the pleadings and, hence, would have been excluded if objected to timely.
(Citations omitted.) Conversely, if evidence is admissible for any other purpose, it does not serve to enlarge the pleadings without the express consent of the opposing party.[5]
Mrs. Cola stated a claim against the uninsured motorist and medical payments portions of the insurance policy. She did not allege any other claim against Allstate. When the insurance policy was introduced into evidence it did not expand the pleadings, for the policy was pertinent to the uninsured motorist and medical payment claims. The trial court committed legal error in finding the pleadings expanded and in rendering judgment under the liability coverage.

DOUGLAS HARRIS'S JUDGMENT
In its summation of the issue of whether the insurance policy provided coverage to Cola for his liability for Harris's damages, the trial court found coverage under one of the exclusions of the policy Exclusion Three. That exclusion states coverage is excluded for "a non-owned auto while being used in any business or occupation of an insured person. However, coverage does apply while you, your chauffeur, or domestic servant are using a private passenger auto or trailer." The court determined the exclusion did not apply because the vehicle was a private passenger auto. The trial court reasoned that the policy thus provided coverage to Cola.
An insurance policy is a contract between the parties.[6] It should be construed by using the general rules for the interpretation of contracts as set out in the Louisiana Civil Code.[7] A court is to determine the intent of the parties to an insurance contract in accordance with the general, ordinary, plain, and popular meaning of the words used in the policy, unless the words have acquired a technical meaning.[8] An insurance policy should not be interpreted in an unreasonable manner, such as to enlarge coverage beyond what is reasonably contemplated by the terms of the policy.[9] An insurance policy is construed as a whole, and one part of the contract cannot be construed separately at the expense of disregarding another section of the contract.[10]
In Gambino v. Lamulle,[11] the trial court found coverage under an exclusion in the *826 policy, but the appellate court reversed, stating, "appellees argue that Trauth is somehow covered for the one million dollars by virtue of an exclusion in the policy. While the trial court was apparently persuaded by this argument, we have concluded that it is meritless.... The exclusions are irrelevant. They could be relevant only if there were coverage in the first instance."
The second paragraph of Part 1 of the Allstate policy herein states, "Under these coverages, your policy protects an insured person from claims for accidents arising out of the ownership, maintenance or use, loading or unloading of an insured auto" (underlining added). The insurance policy lists as one of its definitions of an insured auto, "(4) A non-owned auto used by you or a resident relative with the owner's permission. This auto must not be available or furnished for the regular use of an insured person."
The trial court did not make any factual findings on the issue of whether the vehicle was available or furnished for Cola's regular use, for it found liability under one of the exclusions of the policy. As the appellate court stated in Gambino, the exclusions are irrelevant and should not be used unless coverage had been determined. Since the trial court's use of Exclusion Three of the policy to determine coverage was legal error, we are reviewing this issue de novo to determine whether the vehicle was an insured auto under the policy.
Allstate contends the insurance policy does not provide liability coverage for Cola because he was driving a non-owned vehicle that was provided for his "regular use." So, Harris could not recover under the liability portion of the policy either. On the other hand, Harris contends the policy provides coverage because "regular use" is synonymous with "personal use," and the vehicle was not provided for Cola's personal use.
Cola testified he was a juvenile officer on duty twenty-four hours a day and the vehicle he was driving was assigned to him by the sheriff's office. He also stated:
Q. So, you were on 24-hour call?
A. Yes, sir.
Q. Now, this vehicle that you were operating the eve of the accident, you used that vehicle all the time?
A. As long as I was on sheriff's office business and personal businessso, it would be fair to say, yes, sir, 99 per[cent] of the time I used that vehicle.
Q. You would take that vehicle home
A. Yes, sir.
Q.with you at night?
A. Yes, sir.
Q. OK. If you had to do things like go and eat with your wife, you would use that vehicle?
A. Yes, sir.
Q. Matter of fact, that's what you were doing that night.
A. Yes, sir.
Q. Did the sheriff's office allow you to use that vehicle for personal errands or to do personal things?
A. Yes, they did, sir.
Cola's wife went on to collaborate his testimony stating she and her husband used the vehicle for personal use.
Allstate insured the Cola's personal vehicle and not the 1992 Crown Victoria that was involved in this accident, which was owned and insured by the sheriff's office. We reviewed this issue in Romano v. Girlinghouse:[12] "The purpose of the regular use exclusion is to protect an insurance company against double coverage when a premium has been paid on only one vehicle. If the insured has access to a second vehicle furnished for his regular use, the insurance company can rightfully require *827 that a premium be paid for the insured's use of the second vehicle."
In Hanson v. Benelli,[13] an officer was in an accident in a vehicle provided for his twenty-four hours a day. Hanson sued Benelli's personal automobile insurance provider, Allstate. Benelli's policy with Allstate had language identical to that stated above under the "Insured Autos" section of Cola's policy. The court found, "[The officer's] uncontroverted testimony establishes that the unmarked car was assigned to him for use on a 24-hour basis, whether for official business or for personal errands. Because this constitutes `regular use' within the common, ordinary meaning of those words, the policy cannot be interpreted to cover this accident."[14]
Similar to the facts in Hanson, Cola and his wife testified the vehicle was available and furnished for Cola's regular use. He stated he used it 99% of the time. His wife stated they used the vehicle for personal and business purposes. Although Sheriff Thomas Mabile, Cola's supervisor, testified the vehicle was for business purposes only, and on to second day of the trial, Cola testified the vehicle was provided only for business purposes, we find Cola's original testimony and the testimony of his wife established that he as well as business purposes.
Since this vehicle was in "regular use" by Cola, it was not an insured auto, i.e., not covered under this policy. We find the trial court committed legal error in awarding damages to Harris under the policy.

CONCLUSION
For the foregoing reasons, the judgment of the trial court against Allstate Insurance Company is reversed. Judgment is hereby rendered dismissing the claims of Edith Cola and Douglas Harris against Allstate. All costs are assessed equally against Edith Cola and Douglas Harris.
REVERSED AND RENDERED.
NOTES
[1] Judge Edward A. de la Houssaye, III, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Allstate insured the personal vehicle of the Colas.
[3] The court also awarded expert witness fees and dismissed Larry Cola's demand against Harris and his Insurer, State Farm.
[4] 576 So.2d 992, 995 (La.1991).
[5] Sledge v. Continental Cas. Co., 25,770, pp. 19-20, (La.App.2d Cir. 6/24/94), 639 So.2d 805, 819; Wallace v. Hanover Ins. Co., 164 So.2d 111, 118 (La.App. 1st Cir.), writ. denied, 246 La. 598, 165 So.2d 486 (1964).
[6] Carbon v. Allstate Ins. Co., 97-3085, p. 4 (La.10/20/98), 719 So.2d 437, 439.
[7] Id.
[8] Id. at 439-440.
[9] Id.
[10] Eason v. Financial Indem. Co., 98-381, p. 3 (La.App. 3d Cir.10/28/98), 721 So.2d 528, 529.
[11] 97-2798, pp. 3BF4 (La.App. 4th Cir.6/10/98), 715 So.2d 574, 575.
[12] 385 So.2d 352, 355 (La.App. 1st Cir.1980).
[13] 97-1487, p. 18 (La.App. 4th Cir.9/30/98), 719 So.2d 627, 637, writ denied, 98-2754 (La.1/8/99), ___ So.2d ___, 1999 WL 41026.
[14] Hanson, 97-1467, p. 18, 719 So.2d 627, 637.