# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 03-1438


DAVID CLOUD

VERSUS

NATIONAL AUTOMOTIVE INSURANCE CO.


**********

APPEAL FROM THE
NATCHITOCHES CITY COURT
PARISH OF NATCHITOCHES, NO. 21,334
HONORABLE FRED S. GAHAGAN, CITY COURT JUDGE

**********

## ELIZABETH A. PICKETT
## JUDGE

**********

Court composed of Sylvia R. Cooks, Billie Colombaro Woodard, Marc T. Amy, and Elizabeth A. Pickett, Billy H. Ezell, Judges.

### AFFIRMED IN PART, REVERSED IN PART AND RENDERED.

Cooks, J., dissents and assigns written reasons.
Woodard, J., dissents for the reasons assigned by Judge Cooks.

Kenneth E. Pickering
Pickering & Cotogno
301 Magazine St.
New Orleans, LA 70130
(504) 581-1222
Counsel for Defendant Appellant:
National Automotive Insurance Co.

Robert Stuart Wright
Attorney at Law
P.O. Box 1156
Natchitoches, LA 71458-1156
(318) 352-9950
Counsel for Plaintiff Appellee:
David Cloud

**PICKETT, JUDGE.**

The appellant, National Automotive Insurance Company, appeals a judgment of the trial court construing certain language in an insurance contract as ambiguous. The appellee answers the appeal, asking that the trial court's ruling denying an award of penalties and attorney fees be reversed.

## FACTS

On August 4, 2002, a 1996 Nissan Maxima owned by David Cloud was involved in a collision. The car was insured by National Automotive Insurance Company (National). The car was determined to be a total loss.

The insurance policy contained the following provision:

**Limit of Liability** – The limit of the Company's liability for loss will be the lesser of the:
(1) actual cash value of the stolen or damaged property.
(2) the purchase price of the stolen or damaged property.
(3) or amount necessary to repair or replace the property with other like kind and quality.

Cloud had purchased the car in March 2002 for $5000.00. National made an offer to settle the claim for $4500.00 (the amount of the purchase price less a $500.00 deductible) on August 23, 2002. In a letter from his attorney dated September 3, 2002, Cloud refused the offer, claiming he was entitled to recover the full book value of the car, which was $7160.00. On October 30, 2002, National tendered a check for $4200.00, which was the amount claimed not in dispute. Cloud filed the instant suit, seeking the book value of the car as well as penalties and attorneys fees for failure to timely pay the claim.

The matter was submitted to the trial court on briefs; no testimony was taken. The trial court found that the clause at issue would lead to absurd consequences and was therefore legally ambiguous. The trial court found that National was required to pay the fair market value of the car. It declined to award penalties and attorney fees,

1

finding that National was not arbitrary and capricious (See La.R.S. 22:658) and acted in good faith (See La.R.S. 22:1220).

National appeals the finding that the contract was legally ambiguous. Cloud answers the appeal seeking attorneys fees and penalties.

## ASSIGNMENTS OF ERROR

National asserts two assignments of error:

1. The record is devoid of any proof that the language of the contract of insurance leads to an absurd consequence, and it was manifestly erroneous, clearly wrong, and legal error for the trial court to alter the terms of the contract between the parties.
2. The record is devoid of any proof that the limitation of liability and coverage set forth in the contract between the parties conflicts with any statutory law or public policy, and it was manifestly erroneous, clearly wrong, and legal error for the trial court to set aside the limitation.

Answering the appeal, Cloud asserts the trial court erred in not awarding penalties and attorneys fees pursuant to La.R.S. 22:658 and 22:1220.

## DISCUSSION

The supreme court recently set forth the rules for interpreting a contract of insurance in *Cadwallader v. Allstate Ins. Co.*, 02-1637, pp.3-4 (La. 6/27/03), 848 So.2d 577, 580.

> An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code. *Carbon v. Allstate Ins. Co.*, 97-3085, p. 4 (La.10/20/98), 719 So.2d 437, 439; *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-0911, p. 5 (La.1/14/94), 630 So.2d 759, 763. The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract. *See* La. Civ.Code art. 2045; *Carbon*, 719 So.2d at 439; *Louisiana Ins.*, 630 So.2d at 763.

> Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. *See* La. Civ Code art. 2047; *Peterson v. Schimek* , 98-1712, p. 5 (La.3/2/99), 729 So.2d 1024, 1028-29; *Carbon*, 719 So.2d at 440-441; *Reynolds*, 634 So.2d at 1183. An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual

2

interpretation to enlarge or to restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion. *Carrier v. Reliance Ins. Co.*, 99-2573, p. 11 (La.4/11/00), 759 So.2d 37, 43; *Peterson*, 729 So.2d at 1029. The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties' intent. *Succession of Fannaly v. Lafayette Ins. Co.*, 01-1355, p. 4 (La.1/15/02), 805 So.2d 1134, 1138; *Peterson*, 729 So.2d at 1029.

Ambiguous policy provisions are generally construed against the insurer and in favor of coverage. La. Civ.Code art. 2056; *Carrier*, 759 So.2d at 43; *Louisiana Ins.*, 630 So.2d at 764. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. *Carrier*, 759 So.2d at 43. That strict construction principle applies only if the ambiguous policy provision is susceptible to two or more reasonable interpretations; for the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable. *Carrier*, 759 So.2d at 43-44, (emphasis in original); *Louisiana Ins.*, 630 So.2d at 770.

If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. *Fannaly*, 805 So.2d at 1137; *Louisiana Ins.*, 630 So.2d at 764. Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms. *Peterson*, 729 So.2d at 1029; *Louisiana Ins.*, 630 So.2d at 764. The determination of whether a contract is clear or ambiguous is a question of law. *Louisiana Ins.*, 630 So.2d at 764.

Furthermore, in *Doerr v. Mobil Oil Corp.*, 00-947, p.6 (La. 12/19/00), 774 So.2d 119, 124, the supreme court held:

The Civil Code is clear that if a contract does not lead to absurd consequences it will be enforced as written. See La.Civ.Code art. 2046. When absurd results are possible from such a reading, however, the contract is ambiguous, and the courts must construe the provision in a manner consistent with the "nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties." La.Civ.Code art. 2053; *accord* La.Rev.Stat. 22:654.

As noted in *Cadwallader*, interpretation of a contract is a question of law. On review, the proper standard is whether the trial court was legally correct. *Weeks v. T.L. James & Co., Inc.*, 626 So.2d 420 (La.App. 3 Cir.1993), *writs denied*, 93-2909, 93-2936

3

(La.1/28/94), 630 So.2d 794.

The plaintiff argued, and the trial court agreed, that while the wording of the contract was clear, there could be a situation in which a literal reading would lead to absurd consequences, rendering the language in question legally ambiguous. *Doerr*,774 So.2d 119. The trial court's written reasons for judgment explain his finding:

> The Court determines that in fact the literal reading of this part of National's policy would in fact lead to absurd consequences. Mr. Cloud's brief gives one example of absurd consequences in that a father donates a vehicle to his child, then under a literal reading of the collision damage coverage, there would be nothing owed by the insurer. What if someone purchased a 1957 Chevrolet Impala from a junkyard for $250.00, spent two years refurbishing the same, and now has a vehicle that is worth $10,000.00. Under the policy, all he would be entitled to, if that vehicle were destroyed, would be $250.00. The bottom line is that if you read the policy as written, there are many occasions in which someone would purchase and pay for collision damage coverage and actually not be covered at all. This is an absurd consequence. The Court therefore determines that the language in National's policy limiting them to the sales price is legally ambiguous and must be read to reflect that the insurance company is obligated to pay the fair market value of the automobile.

The appellant claims that the flaw in the trial court's reasoning is the fact that the hypothetical situations should not have been considered because they were not in evidence. In fact, Cloud does not claim that a literal reading of the policy leads to an absurd consequence in this case. The trial court erred in finding the wording of the policy legally ambiguous under the facts before us, which is all we can consider. While a set of facts could be imagined wherein the policy language would lead to an absurd result, it does not lead to an absurd result in this case. The parties are bound by the policy.

As to the appellant's second assignment of error, there was no indication that the trial court found that the policy terms conflicted with any statutory law or public policy. His ruling was based on the fact that he found legally ambiguous language.

4

The second assignment of error has no basis in the record.

The appellant's answer to the appeal is predicated on two separate statutes. Louisiana Revised Statute 22:658 provides that failure to pay a claim within thirty days from the receipt of satisfactory proof of loss is subject to penalties and attorney fees if that failure is found to be arbitrary, capricious, or without probable cause. The plaintiff has the burden of proving the failure to pay. *Wyble v. Allstate Ins. Co.*, 581 So.2d 325 (La.App. 3 Cir. 1991). The record reflects that National and Cloud entered into negotiations in an attempt to settle the claim. On October 21, Cloud, through his attorney, rejected an offer of $5000.00 to settle the claim, and National issued a check on October 30, 2002. The trial court's conclusion is based on a finding of fact, and on appeal the trial court's factual findings should not be disturbed absent manifest error. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). The trial court was not wrong in refusing to award penalties and attorney fees based on La.R.S. 22:658.

Cloud also claims he should be awarded penalties and attorney fees pursuant to La.R.S. 22:1220. This statute imposes upon the insurer a duty of good faith and fair dealing. Specifically, La.R.S. 22:1220(B)(5) states that the insurer breaches this duty if it fails to pay a claim within sixty days "if such failure is arbitrary, capricious, or without probable cause." Again, the trial court found that these conditions were not met, and that finding should not be disturbed as it is supported by the record.

## CONCLUSION

The ruling of the trial court is reversed as to its finding that the policy is legally ambiguous. The trial court's judgment is affirmed as to the denial of penalties and attorney fees. The costs of this appeal are to be divided equally between the appellant and the appellee.

**AFFIRMED IN PART, REVERSED IN PART AND RENDERED.**

5

DAVID CLOUD

VERSUS

NATIONAL AUTOMOTIVE INSURANCE, CO.

**COOKS, J., dissents.**

I agree with the decision of the trial court and find the contract of insurance, as written, leads to absurd consequences and is against public policy. The trial court concluded "if you read the policy as written, there are many occasions in which someone would purchase and pay for collision damage coverage and actually not be covered at all. This is an absurd consequence. The Court therefore determines that the language in National's policy limiting them to the sales price is legally ambiguous and must be read to reflect that the insurance company is obligated to pay the fair market value of the automobile." The reasoning of the trial court is consistent with established jurisprudence, cited in National's brief, which holds recovery of damages under collision policies are limited to either the cost of repair or the actual cash value of the vehicle at the time of the accident, less salvage. *See Giles Lafayette v. State Farm Mutual Automobile Insurance Co.*, 467 So.2d 1309 (La.App. 3 Cir.)*writ not considered,* 472 So.2d 1305 (La. 1985); *Holt v. Rapides Parish Police Jury,* 574 So.2d 525 (La.App. 3 Cir. 1991). Unlike most policies, the language in the National policy allows it to collect premiums for coverage it is not providing. This is the public policy issue and one which the majority opinion fails to address. The trial court cited two instances when this situation occurs. One would be if the automobile were donated to the owner and the other would be if the owner purchased an automobile from a junkyard and then rebuilt it. In both these instances, an insured would be paying

premiums based on the value of the car and would reasonably believe the vehicle was covered up to the market value. The majority incorrectly dismisses these situations as "hypothetical" and chastises the trial court for considering facts not in evidence. It is the majority opinion which fails to grasp the public policy issue squarely before us. As in the two other "hypothetical" situations, Mr. Cloud obtained his vehicle for less than market value but National was collecting premiums based on market value. In other words, he was paying insurance premiums for coverage he did not have. Additionally, in this case, Mr. Cloud reasonably believed he would recover the market value of his car if it was destroyed. Mr. Cloud purchased his 1996 Nissan Maxima for $5,000.00. The blue book value was $7,160.00. National Automotive Insurance Company issued a policy of insurance and Mr. Cloud paid premiums, based on the value of $7,160.00, not the purchase price of $5,000.00. I believe it is more than fair to require National to pay the actual cash value of the car. To allow National to escape its responsibility would "overlook the nature and function of insurance companies." *Sharp v. Daigre*, 555 So.2d 1361, 1364 (La.1990). In *Sharp*, the Louisiana Supreme Court addressed the question of whether an insured may recover punitive damages assessed against the tortfeasor from his UM carrier. In holding the UM carrier responsible for punitive damages, the Court recognized the *quid pro quo* relationship between an insurer and insured and stated:

> In exchange for providing this guarantee of protection to thousands of motorists, they earn a profit. Having accepted insurance premiums from Harvey Sharp, they must fulfill their side of the bargain. *Cf Lavender v. State Farm Mutual Automobile Insurance Co.*, 828 F.2d 1517 (11th Cir. 1987).

*Id.* at 1364.

I respectfully disagree with the majority opinion and would find National is required to pay for the actual value of the vehicle.