ROLAND L. BELSOME, Judge.
 

 | jThis appeal is taken from the trial court’s granting of summary judgment in favor of Progressive County Mutual Insurance Company.
 

 On July 14, 2008, Jonus Johnson was working as a mechanic in his father’s shop. Among the vehicles in the shop for repairs that day were a Peterbilt dump truck and a Sterling truck. The Peterbilt truck was owned by Renaldo Simmons and the Sterling truck was owned by B & S Trucking, Inc. and Rudy St. Amand. Brandon St. Amand had driven the Sterling truck to the shop for service. While Mr. Johnson was changing the brakes-on the Peterbilt truck, Brandon mentioned to Mr. Simmons that he was interested in the operation of a truck with an automatic transmission like the Peterbilt. Simmons allowed Brandon to sit in the cab of the truck while it was undergoing the brake job.
 

 During the time that Brandon was in the cab of the Peterbilt, Mr. Johnson requested that Simmons start the truck in order to maintain brake air pressure. Given that Brandon was already inside of the truck, Simmons asked Brandon to start the truck. The truck was in reverse gear when Brandon started the engine and | ?as a result, the truck rolled over the chocks and the jack, and onto Mr. Johnson’s right side causing multiple injuries.
 

 Mr. Johnson filed suit against Brandon St. Amand, Renaldo Simmons, Safeco, and Progressive for his injuries and resulting damages. His first supplemental and amended petition named B & S Trucking and Rudy St. Amand as defendants alleging respondeat superior for failing to properly train Brandon. Progressive filed a motion for summary judgment on the issue of coverage, which the trial court granted. For the reasons that follow, we affirm.
 

 
 *695
 
 At the time of the incident, the Sterling truck was covered by a Commercial Auto Insurance Policy issued by Progressive. The named insureds were B & S Trucking, Inc. and Rudy St. Amand with Boh Brothers Construction, Scioneaux, Inc., and Rudy St. Amand as additional insureds. Upon review of the facts and insurance policy, the trial court found that the language within the policy was clear and that there were no provisions which would afford coverage for the Peterbilt truck. Therefore, summary judgment was granted in favor of Progressive and Mr. Johnson appealed.
 

 On appeal Mr. Johnson argues that the trial court erred in: 1) finding that Brandon St. Amand did not have permission from Renaldo Simmons to operate the Pet-erbilt dump truck at the time of the accident; 2) ruling that Brandon St. Amand was not an insured driver under the Progressive policy; 3) finding that there was no evidence that the Peterbilt truck was being operated by Brandon as a temporary substitute vehicle for the 2000 Sterling dump truck; and 4) failing to find that the [.^Progressive policy provided coverage to B & S Trucking, Inc. and/or Rudy St. Amand for the negligent acts of Brandon and for their failure to properly train Brandon on the operation of an automatic transmission dump truck.
 

 This Court reviews the granting of a motion for summary judgment
 
 de novo. Schroeder v. Board of Supervisors of Louisiana State University,
 
 591 So.2d 342, 345 (La.1991). A motion for summary judgment is appropriate “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B).
 

 An insurance policy is a contract between the parties and should be interpreted using the general rules of contracts as provided in the Civil Code.
 
 Huggins v. Gerry Lane Enterprises, Inc.,
 
 06-2816, 06-2843, p. 3 (La.5/22/07), 957 So.2d 127, 129 (citing
 
 Cadwallader v. Allstate Ins. Co.,
 
 02-1637, p. 3 (La.6/27/03), 848 So.2d 577, 580;
 
 Louisiana Ins. Guar. Ass’n v. Interstate Fire & Casualty Co.,
 
 93-0911, p. 5 (La.1/14/94), 630 So.2d 759, 763). The plain, ordinary and generally prevailing meanings should be given to words and phrases used in an insurance policy, unless the words have acquired a technical meaning.
 
 Id.
 
 (citing La. C.C. art. 2047;
 
 Cadwallader,
 
 02-1637 at p. 3, 848 So.2d at 580;
 
 Carbon v. Allstate Ins. Co.,
 
 97-3085, p. 4 (La.10/20/98), 719 So.2d 437, 439). If the language of the insurance policy is clear and unambiguous, this Court must refrain from enlarging or restricting the provisions beyond the reasonably contemplated terms.
 
 Id.
 
 (citing
 
 Carrier v. Reliance Ins., Co.,
 
 99-2573, pp. 11-12 (La.4/11/00), 759 So.2d 37, 43).
 

 |4Mr. Johnson’s first assignment of error challenging the trial court’s finding that Brandon did not have Simmons’ permission to use the Peterbilt truck is a misinterpretation of the trial court’s statement. In the trial court’s reasons for judgment it states that “... there was no permission by the insured for Brandon St. Amand to operate the Peterbilt at any time, much less on the date in question.” That statement is consistent with the evidence presented that B & S and/or Rudy St. Amand did not authorize or have any knowledge of Brandon entering the Peterbilt truck. Because the subject of the summary judgment was the coverage provided by the Progressive policy, any reference to the insured would be a reference to B & S and Rudy St. Amand, not Mr. Simmons. There is no indication that the trial court found Brandon entered the Peterbilt truck
 
 *696
 
 without Simmons’ permission. Thus, the first assignment of error is without merit.
 

 In sum, Mr. Johnson’s three remaining assignments of error maintain that the provisions of the Progressive policy provide coverage for the claims asserted in this case. To determine the correctness of that assertion, this Court must analyze the facts and circumstances surrounding the accident together with the terms of coverage in the policy.
 

 As for Brandon’s status under the policy, he is clearly not a named insured on the declaration sheet of the policy. However, as a “rated driver” and permissive user, Brandon is covered as an insured while operating a covered auto.
 
 [1]
 
 The | ¡¡determination of coverage in this case rests solely on whether the vehicle in question, the Peterbilt truck, was a covered auto under the policy.
 

 The policy’s declaration sheet lists the covered auto by make, model and vehicle identification number. The covered auto has a designation symbol of “7” referencing “specifically described ‘autos’ ”.
 
 [2]
 
 Other autos may be covered if it fits the criteria set forth under Section I-Covered Autos (B) and (C).
 

 Section I — Covered Autos
 

 C. Certain Trailers, Mobile Equipment and Temporary Substitute
 

 ⅜ ⅝ ⅛* #
 

 3. Any “auto” you do not own while used with the permission of its owner as a temporary substitute for a covered “auto” you own that is out of service because of its:
 

 a. Breakdown;
 

 b. Repair;
 

 c. Servicing;
 

 d. “Loss” or
 

 e. Destruction.
 

 Mr. Johnson argues that the substitute vehicle provision of the policy applies to this case. He directs this Court to
 
 Smith v. Louisiana Farm Bureau Casualty Ins. Co.,
 
 45,013, 45,014 (La.App.2d Cir.4/23/10), 35 So.3d 463, in support of his position. In
 
 Smith,
 
 a crawfish wholesaler used a pickup truck and trailer to deliver crawfish while his refrigerated truck was in the shop for repairs.
 
 Id.
 
 In an unfortunate turn of events, the trailer carrying the crawfish broke loose from the | ¡¡pick-up truck, crossed the median and struck a vehicle fatally injuring the driver. Id. The trial court found the truck and trailer were covered under the commercial auto policy that covered the refrigerated truck that was being repaired. Id. Because both the pick-up truck and trailer were needed to accomplish what the refrigerated truck would normally do, the Second Circuit held that both the pick-up truck and trailer were in use as a substitute vehicle for the insured auto. Id. Accordingly, coverage was extended to the damage caused by the trailer.
 
 Id.
 

 We find this case distinguishable from
 
 Smith.
 
 The Peterbilt truck was not being operated in any manner that would consti
 
 *697
 
 tute it being a substitute vehicle for the Sterling truck. The evidence is undisputed; the Peterbilt truck was in the process of being repaired, so it was inoperable at the time the accident occurred. Mr. Johnson suggests that Brandon was using the Peterbilt truck in some training capacity, but that is not supported by the evidence. Brandon was curious and expressed interest in the truck’s automatic transmission. He was not receiving instruction or being advised while in the cab of the Peterbilt truck. Further, he was not authorized by or acting on behalf of B & S or Rudy St. Amand. Entering the cab of the Peterbilt truck was an independent act committed outside the scope of his employment with B & S and Rudy St. Amand. The Progressive policy covering the Sterling truck does not extend to this incident.
 

 Accordingly, we find the trial court was correct in granting summary judgment in favor of Progressive County Mutual Insurance Company.
 

 AFFIRMED.
 

 [1]
 

 . Progressive policy Section II- — -Liability Coverage
 

 A. Coverage
 

 We will pay all sums an "insured” legally must pay as Damages because of "bodily injury” or "property damage” to which this insurance applies, caused by an "accident” and resulting from the ownership, maintenance or use of a covered "auto".
 

 [[Image here]]
 

 1. Who Is an Insured The following are "insureds”:
 

 a. You for any covered "auto".
 

 b. Anyone else while using with your permission a covered "auto” you own, hire or borrow_(emphasis added).
 

 [2]
 

 . The policy at issue lists one covered auto, a "2000 Strg LT9 YIN: 2EXEWEBSYAF36929.