671 So.2d 1116 (1996)
Susan Richardson PRUDHOMME, individually & on Behalf of her Minor Son, Travern Richardson, Plaintiffs-Appellants,
v.
IMPERIAL FIRE & CASUALTY INSURANCE COMPANY & Warren Bias, Defendants-Appellees.
No. 95-1502.
Court of Appeal of Louisiana, Third Circuit.
April 3, 1996.
Writ Granted in Part; Denied in Part June 7, 1996.
*1118 Norris Joseph Greenhouse, Marksville, for Susan Richardson Prudhomme, etc.
Frederick Douglas Gatz Jr., Lafayette, for Illinois National Insurance Company.
Before YELVERTON, COOKS and DECUIR, JJ.
YELVERTON, Judge.
Susan Richardson Prudhomme, for herself and her minor son, Travern Richardson, sued Illinois National Insurance Company (Illinois National) and Warren Bias for damages Travern sustained as a result of an automobile accident on May 28, 1994, in Evangeline Parish. The trial judge found that Bias was intoxicated and 100% at fault, and awarded damages against him and in favor of Travern Richardson in the amount of $18,000, and in favor of Susan Prudhomme in the amount of $1,000. The trial judge dismissed Illinois National finding no insurance coverage for this accident. Plaintiffs appeal the dismissal of Illinois National. We reverse and render.

FACTS AND PROCEDURAL HISTORY
Warren Bias was driving toward Church Point after a night of drinking in Ville Platte. His car crossed the centerline and collided head-on with Travern Richardson's vehicle. The car Bias was driving was owned by his sister, Burnetta Fruge, and it was insured under a Personal Auto Policy issued by Illinois National. Warren Bias was not named as an insured in the policy. Bias at the time of the accident was living with his sister in Church Point.
On appeal, plaintiffs contend that the trial court erred in finding that the policy of liability insurance issued by Illinois National to Burnetta Fruge, and covering the auto that Bias was driving, did not provide coverage for this accident.

FAMILY MEMBER
The first basis for the trial judge's coverage decision was that Bias was not a family member of Fruge's household. The plaintiffs argue that this finding of fact was clearly and manifestly wrong. They claim that Bias was a resident of his sister's household and was a covered person under the definition of "insured" as provided in Illinois National's policy. The policy reads in pertinent part:
B. "Insured" as used in this Part means:
1. You or any "family member" for the ownership, maintenance or use of any auto or "trailer".
2. Any person using "your covered auto."
The policy defines "family member" as "a person related to you by blood, marriage or adoption who is a resident of your household." Bias and Fruge are half-siblings and therefore related by blood. The dispute is whether he was a resident of Fruge's household.
The term household embraces a collection of persons as a single group with one head living together under one roof. It is "a `collective body of persons living together within one curtilage, subsisting in common and directing their attention to a common object, the promotion of their mutual interests and social happiness.'" Brown v. Trahan, 526 So.2d 1216, 1219 (La.App. 3 Cir. 1988); Buxton v. Allstate Ins. Co., 434 So.2d 605 (La.App. 3 Cir.1983); Leteff v. Maryland Casualty Company, 91 So.2d 123 (La.App. 1 Cir.1956). Whether a person is or is not a resident of a household is a question of law as well as fact that is to be determined from all the facts of each case. The question is largely one of intention. The intention of a person to be a resident of a particular place is determined by his expressions at a time not suspicious, and his testimony, when called on, considered in the light of his conduct and the circumstances of his life. Andrade v. Shiers, 516 So.2d 1192 (La.App. 2 Cir.1987), appeal after remand, 564 So.2d 787 (La.App. 2 Cir.), writ denied, 567 So.2d 1128 (La.1990) [citing Fielding v. Casualty Reciprocal Exchange, 331 So.2d 186 (La.App. 3 Cir.), writ denied, 334 So.2d 217 (La.1976)].
*1119 Residency is a matter of intention and choice, rather than location. Bearden v. Rucker, 437 So.2d 1116 (La.1983). Although residency is dependent on the facts of each case, the principal test is physical presence with the intention to continue living there. Miley v. La. Farm Bureau Cas. Ins. Co., 599 So.2d 791 (La.App. 1 Cir.), writ denied, 604 So.2d 1313 (La.1992).
The cases cited by the parties in brief focus on the meaning of "resident of the same household" as it relates to a parent and child or a spouse. We note that in these cases, the courts in determining whether the person was or was not a resident of the household considered: (1) Whether the person was living in the house immediately prior to the accident; (2) Whether the person was visiting; or (3) Whether he was entitled to return without having to request permission. See Hamilton v. State Farm Mut. Auto. Ins. Co., 364 So.2d 215 (La.App. 3 Cir.1978), writ denied, 366 So.2d 915 (La.1979); Hobbs v. Fireman's Fund Am. Ins. Companies, 339 So.2d 28 (La.App. 3 Cir.1976), writ denied, 341 So.2d 896 (La.1977); Scott v. Glenn, 408 So.2d 1167 (La.App. 4 Cir.1981).
The record reflects that Bias began living in his sister's house in February of 1994, and had lived there for three months prior to the accident and stayed for about a year after the accident. He was hired at a local crawfish processing plant within one month after moving in with his sister. He testified that his stay was temporary and that he did not consider her house to be his residence. This testimony was corroborated by Fruge when she testified that the intention, when Bias first moved in, was not that he was to live with her, but that he was to visit for the weekend, and only later was it decided that he could stay while he found a job.
There was evidence on both sides of the argument as to whether he was a resident of his half-sister's household in Church Point. He had a key to the house and he was free to come and go as he pleased. He had been living there before the accident and stayed for several months afterwards. He had no other place to live. On the other hand, he testified that his intention, initially, was to stay with his half-sister for a weekend, then it stretched into staying until he found a job. After he found the job, which was seasonal crawfish employment at Acadiana Fine Foods, he said he intended to stay there only until he got money to move to his own place, and the accident happened before he could do that. There was evidence he maintained an address in Ville Platte and received his mail there. He had a girlfriend living in Ville Platte. The accident happened right outside Ville Platte where apparently he had been visiting overnight.
The trial court found the fact to be that Bias was not a resident of his sister's house. It is a close question but we cannot say this finding was manifestly wrong.

OMNIBUS INSURED
Appellants argue that if Bias was not a family member, and insured as such under the policy, then he was an omnibus insured with implied permission to use the car. The policy provides for a category of "insured" as "[a]ny person using `your covered auto'." Finding that Bias did not have permission to use the car the trial judge applied as the test an exclusion in the policy, which stated: "[w]e do not provide liability coverage for any person using a vehicle without a reasonable belief that that person is entitled to do so." The trial judge found that Bias did not have a reasonable belief that he was entitled to use Fruge's vehicle at the time of the accident. In light of the evidence presented, this finding was error.
As "initial permission" has been defined in our jurisprudence, we find that there was implied initial permission by Fruge for Bias to use the car. Once consent, express or implied, is granted by the insured to use the vehicle, any subsequent changes in the character or scope of the use do not require additional specific consent of the insured. The plaintiff has the burden of proving the fact of initial use with express or implied permission of the insured to make coverage effective under the omnibus clause. Manzella v. Doe, 94-2854 (La. 12/8/95); 664 So.2d 398. Moreover, the fact of initial permission must be proved by a preponderance of the evidence without the aid of any presumptions. *1120 Id. Generally, implied permission arises from a course of conduct by the named insured involving acquiescence in, or lack of objection to, the use of the vehicle. Id. Thereafter, "coverage will be precluded only where the deviation from the use consented to amounts to theft or other conduct displaying utter disregard for the return or safekeeping of the vehicle." Francois v. Ybarzabal, 483 So.2d 602 (La.1986).
The evidence is that Fruge left her car keys on the coffee table and went to bed. Bias picked up the keys and used the car. He had used the car before with her consent. He had also used it before without her consent, and she got mad at him when he did, but she never forbade him from using the car. In fact she sent him on errands with the car and let him use it occasionally. No specific consent was given for him to use the car that night. But neither was consent specifically withheld. Bias did not steal the car, and when he had the wreck he was heading back to his sister's house with it. By placing the keys on the coffee table in open view and then going to bed and going to sleep, Fruge provided the opportunity for him to take the car. Because he had taken the car before without consent, and all it cost him was his sister's anger, Bias must have believed that the venture was worth the price.
The evidence established a course of conduct that was neither consent nor lack of consent, but a kind of shaky acquiescence. Once Bias left the house with the car, which we find was with the implied initial permission of the named insured, the permission continued to exist at the time of the accident. Manzella, 664 So.2d 398. This result in the application of the initial permission rule furthers the state policy of extending omnibus insurance coverage to protect innocent accident victims. Id. "[O]ne justification for this rule is that it prevents collusion between the lender and the lendee to avoid liability." Id. at 402.
This result is unchanged by the exclusion language that coverage is not provided "for any person using a vehicle without a reasonable belief that that person is entitled to do so." First, this is exclusion language and manifestly requires strict construction. Touchet v. Firemen's Insurance Co. of Newark, N.J., 159 So.2d 753 (La.App. 3 Cir.), writ denied, 245 La. 963, 162 So.2d 13 (1964). Second, the omnibus clause requirement of La.R.S. 32:900 coupled with the jurisprudential definition of implied consent will not tolerate an exclusion in the policy that cannot be reconciled with statutory and jurisprudential requirements. If a "reasonable belief means, for example, that the consent is less implied and more express than found in such cases as Manzella, 664 So.2d 398, such an exclusion cannot stand. Third, this brother/sister relationship was such that Fruge was willing to leave her keys on the coffee table and go to sleep, knowing full well that Bias had a propensity for taking the car without express permission. In view of his past experience in sometimes receiving permission and sometimes not, it was not unreasonable for Bias, knowing his sister was asleep and could not be using the car, to believe that the presence and visibility of the keys was a tacit invitation to use the car. The plaintiffs proved by a preponderance that Bias was an omnibus insured under the policy, and the trial court erred in concluding otherwise.
For this reason, we reverse the district court's dismissal of Illinois National. The judgment is amended and rendered casting Illinois National Insurance Company solidarily with Warren Bias for the awards, and for interest and costs.
REVERSED AND RENDERED.