758 So.2d 197 (1999)
Timothy LAVERGNE
v.
Rose THOMAS, Robert L. Harris, County Mutual Ins. Co. & Lloyd's Arrowhead Ins. Co.
No. 99-1186.
Court of Appeal of Louisiana, Third Circuit.
December 8, 1999.
Writ Denied March 17, 2000.
Jonathan C. Vidrine, Ville Platte, Louisiana, for Timothy Lavergne.
Robert Murray Mahoney, Lafayette, Louisiana, for County Mutual Ins. Co.
Court composed of NED E. DOUCET, Jr., Chief Judge, MARC T. AMY, and GLENN B. GREMILLION, Judges.
DOUCET, Chief Judge.
Defendant, County Mutual Insurance Company, appeals a judgment of the trial court finding that a "Texas Personal Auto Policy" it issued to Rose Thomas provided coverage to Ms. Thomas' brother, at the time the brother was driving Ms. Thomas' vehicle and involved in an accident. We reverse the judgment of the trial court on the issue of coverage.[1]

FACTS
On July 18, 1997, Rose Thomas drove her Ford Explorer from her home in Dallas, Texas to her mother's home in Ville Platte, Louisiana. Ms. Thomas had just purchased the vehicle two weeks prior to her trip. She was accompanied by her children and planned to stay for a week long visit. She and the four children arrived at approximately 10:00 p.m. and talked for a brief time with her mother *198 and her brother, Henry. Ms. Thomas' brother, Robert L. Harris, who also lived in the house, was not home when she arrived. After she and the children talked with her mother and brother, Henry, Ms. Thomas prepared for bed. She slept on the sofa in the living room. Before retiring, Ms. Thomas placed her purse and car keys on the coffee table next to the sofa.
At the time Ms. Thomas retired, her brother, Robert, had not returned to the residence. Ms. Thomas testified that she does not remember speaking to her brother, Robert, that night. According to Ms. Thomas, the next thing she remembers is her brother, Robert, waking her at about 10:00 a.m. the next morning to tell her "I had an accident in your truck." During the trial of the matter, it was established that Mr. Harris' drivers license was under suspension at the time of the accident.
At the time of the accident Ms. Thomas was covered by a "Texas Personal Auto Policy" issued by County Mutual Insurance Company. The "EXCLUSIONS" portion of that policy contains the following language:
A. We do not provide Liability Coverage for any person:
. . . .
8. Using a vehicle without a reasonable belief that that person is entitled to do so.
This exclusion (8.) does not apply to you or any family member while using your covered auto.
The "DEFINITIONS" section of the policy contains the following provision:
D. "Family member" means a person who is a resident of your household and related to you by blood, marriage or adoption. This definition includes a ward or foster child who is a resident of your household, and also includes your spouse even when not a resident of your household during a period of separation in contemplation of divorce.

LAW AND DISCUSSION
Recently, the Louisiana Supreme Court reviewed the principles governing the interpretation of insurance policies stating as follows:
Before determining whether [Plaintiff] was an insured, it is appropriate to review several well-settled principles of insurance policy interpretation. An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Civil Code. Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co., 93-0911 (La.1/14/94), 630 So.2d 759. The judicial responsibility in interpreting insurance contracts is to determine the parties' common intent. La.C.C. art. 2045.
An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Louisiana Ins. Guar. Ass'n, 630 So.2d at 763 (collecting cases). Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume. Id.

Yet, if the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written. La.C.C. art 2046. When the language of an insurance policy is clear, courts lack the authority to change or alter its terms under the guise of interpretation. Louisiana Ins. Guar. Ass'n, 630 So.2d at 764.
Magnon v. Collins, 98-2822, p. 6-7 (La.7/7/99); 739 So.2d 191, 196-97.
From the clear language of the policy, one can readily see that Robert Harris, was not a resident of Ms. Thomas' household as she lived in Dallas, Texas, and he lived in Ville Platte, Louisiana. Consequently, Mr. Harris would not fit the definition *199 of a "Family member" under the County Mutual policy. The trial court found coverage, reasoning that Ms. Thomas had acquiesced to Mr. Harris' use of her vehicle. The court based its decision on Prudhomme v. Imperial Fire & Cas. Ins. Co., 95-1502 (La.App. 3 Cir. 4/3/96); 671 So.2d 1116, writ granted in part to reorganize limitation of insurer's liability to policy limits only; otherwise denied, 96-1030 (La.6/7/96); 674 So.2d 987, and on the well established public policy to provide insurance benefits to innocent victims, even against unlicensed drivers, as reviewed by the Louisiana Supreme Court in Adams v. Thomas, 98-2003, 98-2005 (La.4/13/99); 729 So.2d 1041.
We find the trial court clearly erred in its conclusion and find the cases relied upon by the trial court are clearly distinguishable from the case sub judice. We first address the Prudhomme case which, like the case before us, involved issues of the status of the driver as a "family member" and whether the driver had consent, either direct or implied, to use his sister's car. In Prudhomme, the trial judge was the same judge hearing this case. He found that the brother was not a resident of his sister's household, and did not have permission to use her vehicle. We reversed on the latter issue based on the evidence presented at trial. In Prudhomme we stated the following:
Appellants argue that if Bias [the brother] was not a family member, and insured as such under the policy, then he was an omnibus insured with implied permission to use the car. The policy provides for a category of "insured" as "[a]ny person using `your covered auto'." Finding that Bias did not have permission to use the car the trial judge applied as the test an exclusion in the policy, which stated: "[w]e do not provide liability coverage for any person using a vehicle without a reasonable belief that that person is entitled to do so." The trial judge found that Bias did not have a reasonable belief that he was entitled to use Fruge's vehicle at the time of the accident. In light of the evidence presented, this finding was error.
As "initial permission" has been defined in our jurisprudence, we find that there was implied initial permission by Fruge for Bias to use the car. Once consent, express or implied, is granted by the insured to use the vehicle, any subsequent changes in the character or scope of the use do not require additional specific consent of the insured. The plaintiff has the burden of proving the fact of initial use with express or implied permission of the insured to make coverage effective under the omnibus clause. Manzella v. Doe, 94-2854 (La.12/8/95); 664 So.2d 398. Moreover, the fact of initial permission must be proved by a preponderance of the evidence without the aid of any presumptions. Id. Generally, implied permission arises from a course of conduct by the named insured involving acquiescence in, or lack of objection to, the use of the vehicle. Id. Thereafter, "coverage will be precluded only where the deviation from the use consented to amounts to theft or other conduct displaying utter disregard for the return or safekeeping of the vehicle." Francois v. Ybarzabal, 483 So.2d 602 (La.1986).
The evidence is that Fruge left her car keys on the coffee table and went to bed. Bias picked up the keys and used the car. He had used the car before with her consent. He had also used it before without her consent, and she got mad at him when he did, but she never forbade him from using the car. In fact she sent him on errands with the car and let him use it occasionally. No specific consent was given for him to use the car that night. But neither was consent specifically withheld. Bias did not steal the car, and when he had the wreck he was heading back to his sister's house with it. By placing the keys on the coffee table in open view and then going to bed and going to sleep, Fruge *200 provided the opportunity for him to take the car. Because he had taken the car before without consent, and all it cost him was his sister's anger, Bias must have believed that the venture was worth the price.
The evidence established a course of conduct that was neither consent nor lack of consent, but a kind of shaky acquiescence. Once Bias left the house with the car, which we find was with the implied initial permission of the named insured, the permission continued to exist at the time of the accident. Manzella, 664 So.2d 398. This result in the application of the initial permission rule furthers the state policy of extending omnibus insurance coverage to protect innocent accident victims. Id. "[O]ne justification for this rule is that it prevents collusion between the lender and the lendee to avoid liability." Id. at 402.
This result is unchanged by the exclusion language that coverage is not provided "for any person using a vehicle without a reasonable belief that that person is entitled to do so." First, this is exclusion language and manifestly requires strict construction. Touchet v. Firemen's Insurance Co. of Newark, N.J., 159 So.2d 753 (La.App. 3 Cir.), writ denied, 245 La. 963, 162 So.2d 13 (1964). Second, the omnibus clause requirement of La.R.S. 32:900 coupled with the jurisprudential definition of implied consent will not tolerate an exclusion in the policy that cannot be reconciled with statutory and jurisprudential requirements. If a "reasonable belief" means, for example, that the consent is less implied and more express than found in such cases as Manzella, 664 So.2d 398, such an exclusion cannot stand. Third, this brother/sister relationship was such that Fruge was willing to leave her keys on the coffee table and go to sleep, knowing full well that Bias had a propensity for taking the car without express permission. In view of his past experience in sometimes receiving permission and sometimes not, it was not unreasonable for Bias, knowing his sister was asleep and could not be using the car, to believe that the presence and visibility of the keys was a tacit invitation to use the car. The plaintiffs proved by a preponderance that Bias was an omnibus insured under the policy, and the trial court erred in concluding otherwise.
Prudhomme, 95-1502, pp. 5-7; 671 So.2d 1116, 1119-20.
At the outset, we note the similarities between the two cases. Both cases involved situations in which the brother had used his sister's car in the past, both with and without permission. In both cases, the sister had gone to sleep, leaving her keys on the coffee table. However, the case sub judice presents some significant differences. In Prudhomme, the brother had been living with his sister for several months, even though he did not intend to make her home his residence. In the case sub judice, Ms. Thomas had been living out of state for approximately ten years and was only visiting at her mother's home at the time of the accident. While her brother, Robert, had used a car she had owned in the past, he had never used her Explorer, which she had purchased only two weeks previously, and had not driven any vehicle belonging to his sister in ten years. While the keys to the car in both the Prudhomme case and the case at bar were left on the coffee table while the sister retired for the evening, in the instant case, Ms. Thomas was sleeping on the sofa next to the coffee table. This was akin to leaving her keys on her bedside table. She testified that in addition to her keys, she had also left her purse and her glasses on the coffee table. Additionally, Mr. Harris' driver's license had been suspended and, thus, he had no expectation that his sister might allow him to use her new vehicle.
Considering all the fact before the court in the case sub judice, we conclude that the trial judge erred in determining *201 that Mr. Harris had a reasonable belief that he was entitled to use Ms. Thomas' Explorer. As we find Mr. Harris lacked permission to use his sister's vehicle, the Adams case which involved "the issue of whether an automobile liability insurer can exclude coverage to the insured or a person driving the insured's vehicle with his or her permission if that person does not have a valid driver's license" Adams, 98-2003, 98-2005, p. 5; 729 So.2d at 1043 (emphasis ours), is not applicable.
Accordingly, for the reasons stated above, the judgment of the district court is reversed as to Defendant, County Mutual Insurance Company. As Robert L. Harris did not appeal, the judgment against him is final. All costs of this appeal are assessed against Plaintiff, Timothy Lavergne.
REVERSED IN PART AND RENDERED.
NOTES
[1] Judgment was rendered against County Mutual and Robert L. Harris, Ms. Thomas' brother and the driver of the covered vehicle at the time of the accident. Mr. Harris did not appeal. The trial court judgment also dismissed Ms. Thomas with prejudice. That portion of the judgment was not appealed.