PARRO, J.,
dissenting.
Li respectfully disagree with the majority opinion for the following reasons.
On a motion for summary judgment, the initial burden of proof is on the moving party. However, on issues for which the moving party will not bear the burden of proof at trial, the moving party’s burden of *1126 proof on the motion is satisfied by pointing out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, the nonmov-ing party must produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden of proof at trial; failure to do so shows that there is no genuine issue of material fact. LSA-C.C.P. art. 966(C)(2); Clark v. Favalora, 98-1802 (La.App. 1st Cir.9/24/99), 745 So.2d 666, 673. In considering whether a genuine issue of material fact exists, courts cannot consider the merits, make credibility determinations, evaluate testimony, or weigh the evidence. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 751.
A plaintiff who seeks to establish coverage under the omnibus clause of an automobile liability insurance policy must prove that the vehicle was being used with the express or implied permission of the named insured. Perkins v. McDow, 615 So.2d 312, 315 (La.1993); see LSA-R.S. 32:900(B)(2). The fact of permission must be proven by a preponderance of the evidence without the aid of any presumptions. See 2Manzella v. Doe, 94-2854 (La.12/8/95), 664 So.2d 398, 402; Norton v. Lewis, 623 So.2d 874, 876 (La.1993). Thus, once ANPAC-LA pointed out to the court that there was an absence of factual support to show that Charles’s use of Nicole’s vehicle was with the express or implied permission of Nicole, the plaintiffs were required to produce factual support sufficient to establish that they would be able to satisfy their evidentiary burden of proof at trial as to this issue.
Nicole testified by deposition that she usually did not let Charles drive her vehicle; however, after eating and consuming alcoholic beverages at a restaurant on the night in question, Nicole allowed Charles to drive them in her vehicle to their next destination, a friend’s house where her boyfriend’s band was practicing.[1] After staying there long enough for her to be able to drive, Nicole drove Charles to the house of another friend. After dropping him off, she proceeded to her mother’s home where she and Charles had been living. She got home around 11:00 p.m. and parked her vehicle in the driveway by a garage in the backyard. Nicole went to bed at approximately 12:00 or 12:30 a.m. Prior to that time, Nicole, who had been in her room, heard Charles when he entered the house. Nicole testified that Charles was due at work that morning and was scheduled to be picked up by a car-pool buddy around 7:30 or 8:00 a.m.[2] Nonetheless, Charles took the keys to Nicole’s vehicle from her purse that was on the kitchen table without asking and left in her vehicle. When she got up to smoke a cigarette between 2:30 and 3:00 a.m., Nicole noticed that her vehicle and Charles were both gone.
It is undisputed that Charles did not have Nicole’s express permission to use her vehicle at the time of the accident. Charles’s earlier use of Nicole’s vehicle from the restaurant to the house where band practice was being held was obvious *1127 ly with Nicole’s express permission, but that express permission did not continue once Nicole resumed control of driving the vehicle. Thus, the majority correctly concluded that the initial | ¡¡express permission could no longer constitute the consent needed to -withstand a subsequent change in the character or scope of the use as discussed in Manzella, 664 So.2d at 402. Accordingly, for there to be coverage under the ANPAC-LA policies, Charles would have had to have been operating the vehicle at the time in question with Nicole’s implied permission.
Generally, implied permission arises from a course of conduct by the named insured involving acquiescence in, or lack of objection to, the use of the vehicle. Francois v. Ybarzabal, 483 So.2d 602, 605 (La.1986). A personal relationship, together with other factors, may prove the required implied permission. Turner v. Alexander, 29,148 (La.App. 2nd Cir.2/26/97), 690 So.2d 756, 758.
Nicole had permitted Charles to drive her vehicle on only two or three occasions within the couple of months since they had returned to live at their mother’s home. Nicole stated that her brother had driven her vehicle on prior occasions when his car was being repaired. However, Nicole explained in her deposition that Charles understood that he was not allowed to use her vehicle without first obtaining her permission. She testified, “I was very strict with letting him use the car.” Charles understood that he was not to use her vehicle under “any circumstances.” When Charles asked for permission to use her vehicle, Nicole would not normally grant him permission. Many times, she opted to drive him where he wanted to go rather than allowing him to use her vehicle. Charles had never before taken the keys for Nicole’s vehicle from her purse. These facts are not contradicted.
In this case, we are not faced with conflicting versions of the facts. The evidence offered in connection with ANPAC-LA’s motion for summary judgment, although establishing a personal relationship between Nicole and Charles, clearly does not establish a course of conduct by Nicole involving acquiescence in, or lack of objection to, the use of the vehicle.[3] Allstate Insurance Company noted that without the testimony of Charles, the purpose for which Charles took Nicole’s vehicle, or if he [4sought to get Nicole’s permission, will never be known. It further urged that it is improper to allow ANPAC-LA to benefit from Allstate’s inability to obtain evidence that would contradict that of Nicole. Although Charles’s death made it more difficult for the plaintiffs to meet their burden of proof in this case, the parties opposing the motion for summary judgment had the opportunity to offer evidence to establish a course of conduct between Nicole and Charles that gave rise to implied permission.[4] Nonetheless, no evidence was offered to contradict Nicole’s testimony to the effect that rarely, if ever, did she allow Charles to use her vehicle and that Charles understood that he was not to use Nicole’s vehicle without first *1128 obtaining her permission.[5] Thus, the fact that Nicole never formally revoked her permission for Charles to drive her car on the night in question, other than by resuming driving control, is irrelevant under the facts of this case. Furthermore, the fact that the determination as to implied permission is extremely fact-sensitive and involves a balancing of legal and public policy issues alone is insufficient to preclude this issue from being resolved in the context of a motion for summary judgment.
For these reasons, I would affirm the trial court’s granting of ANPAC-LA’s motion for summary judgment, because the plaintiffs failed to satisfy their burden of proof with factual support sufficient to establish that they would be able to show at trial that Charles’s use of the vehicle at the time of the accident was with Nicole’s implied permission. Accordingly, I respectfully dissent from the majority opinion.

. Charles’s vehicle was in the shop for repairs, and Nicole had driven them to the restaurant in her vehicle.

. According to their mother, Charles was sitting in a chair and watching television at approximately 1:30 a.m. when she advised him that he should go to bed. She explained that Charles responded that he was going to watch some television and then go to bed because he needed to get up for 7:00 a.m. for work.

. Thus, the facts of this case differ from those of Prudhomme v. Imperial Fire & Casualty Insurance Company, 95-1502 (La.App. 3rd Cir.4/3/96), 671 So.2d 1116, 1120, cited by Allstate Insurance Company.

. Furthermore, the parties had the opportunity to fully cross-examine Nicole during her deposition, and her deposition testimony was unwavering and consistent.

. Charles’s mother testified in her deposition that she also would not permit Charles to drive her vehicle. One of her reasons for this policy was based on the fact that Charles had wrecked one of her cars in the past.