EDWIN A. LOMBARD, Judge.
hThe defendant, Dustin Rein, and his insurer, Safeway Insurance Company, appeal the judgment rendered in favor of the plaintiff, Gladys Fletcher, allocating 60% of the fault for an intersectional automobile collision to Mr. Rein. After review of the record in light of the applicable law and arguments of the parties, the trial court judgment is affirmed.

Relevant Facts and Procedural History

On March 3, 2009, at approximately 3 p.m. in New Orleans East,[1] Ms. Fletcher executed a left turn onto Boston Drive from the 1-10 Service Road as Mr. Rein proceeded forward past the stop sign on Boston Drive at the 1-10 Service Road. When the accident investigation team (Detective Reuben Henry and Officer Desmond Davis) arrived two hours later, they observed minor damage to both vehicles and were advised that the vehicles had been moved. According to the police report, Mr. Rein stated that as he approached the 1-10 Service Road on Boston Drive the view of on-coming traffic was partially blocked by a wooden fence and, accordingly, he drove forward to await clear entry to the service road but before he could make the turn, Ms. Fletcher made the turn onto Boston Drive |2and, failing to make a wide enough turn, struck the front of his vehicle. However, Ms. Fletcher told the officers that, as she was turning left onto Boston Drive, Mr. Rein tried to turn left onto the service road and struck her vehicle. The police report indicates that the officers spoke to no independent witnesses and did not issue a traffic citation to either driver.
On May 6, 2009, the plaintiff filed a petition for damages in First City Court for the City of New Orleans. The trial was held on March 11, 2010. Ms. Fletcher testified on her own behalf and the defense, in addition to the testimony of Mr. Rein, presented the testimony of Barry Luminais (a witness to the accident), Scott Coleman Rushton (an accident scene investigator employed by the defendant insurance company), and deposition testimony of the investigating officers. The defense also proffered the testimony of Mr. Rein’s father, William Rein. After hearing the testimony of the witnesses and reviewing the police report and photos taken after the accident, the trial judge issued a written opinion on April 19, 2010, finding that the defendant’s vehicle struck the plaintiffs vehicle as she executed the turn from the 1-10 Service Road onto Boston Drive but allocated 40% of the fault to the plaintiff. Accordingly, judgment was rendered in favor of the plaintiff for $15,000.00 in general damages and $6,044.00 in special damages, to be reduced by 40% (fault allocated to plaintiff), plus legal interest from the date of judicial demand and costs.
The defendants appeal this judgment.

*1082
Standard of Review

laThis court may not set aside a trial court’s finding of fact absent “manifest error” or unless it is “clearly wrong.” Rosell v. ESCO, 549 so.2d 840 (La.1989). Thus, we can only reverse a factfinder’s determination if we find that no reasonable factual basis exists in the record to support the trial court finding and that the record establishes that the finding is clearly wrong or manifestly erroneous. See Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Accordingly, the issue before this court is not whether the trier of fact was right or wrong, but whether the factfin-der’s conclusion was a reasonable one. Stobart v. State Department of Transportation and Development, 92-1328, p. 4, 617 So.2d 880, 882. Even if we may feel our own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact will not be disturbed where conflict exists in the testimony. Id. (citations omitted); see Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990) (even if it would have weighed the evidence differently, an appellate court may not reverse the trial court or jury’s findings if they are reasonable in light of the record reviewed in its entirety). This principle of review is based upon the trial court’s better capacity to evaluate live witnesses as compared to our access only to a cold record, as well as the proper allocation of trial and appellate functions between the respective courts. Stobart, supra. Thus, where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart, supra.

Assignment of Error 1

The defendants argue that the trial court erred in allocating 60% of the fault to Mr. Rein because that finding is contrary to Mr. Rein’s own testimony, the | testimony of Mr. Luminais (the independent witness), and the proffered testimony of his father, William Rein.
At trial Mr. Rein testified that he left his construction work site on the day of the accident and drove in his blue Chevrolet S-10 truck Boston Road towards the I-10 Service Road and when he reached the intersection, he looked to left for oncoming traffic and, as he turned to look to the right, Ms. Fletcher’s vehicle struck the left front of his vehicle, damaging his headlight. He conceded, however, that the police report indicated that he told the investigating officers that he was proceeding forward from the stop sign when the accident occurred. Mr. Rein also testified that neither he nor Ms. Fletcher moved their vehicles after the accident, that the accident occurred in his lane of traffic, and that his father took pictures of the scene. Again, he conceded that the police report indicated that the vehicles had been moved to the side of the road before the investigating officers arrived. Mr. Rein testified that his father took pictures immediately after the accident but conceded that the light in the pictures indicated that the pictures were taken much later in the afternoon than 3 p.m. According to Mr. Rein, although they worked at the same construction work site, he did not know Mr. Luminais prior to the accident. Mr. Rein asserted that he passed Mr. Luminais on Boston Drive just prior to the accident and that at the moment of impact Mr. Lumi-nais was approximately 150 feet behind him. Shortly after the accident Mr. Lumi-nais and his passengers drove by the accident scene and gave Mr. Rein a card, saying “Here you go. We’ve seen everything.”
Mr. Luminais testified that he worked for his father’s plumbing business and on the day of the accident he was one vehicle behind Mr. Rein’s stopped vehicle at the *1083 stop sign at the 1-10 Service Road intersection. From this position, he observed 1 ¿Ms. Fletcher’s vehicle turn off the service road and clip the front of Mr. Rein’s vehicle. Because he was on his way to another job, he gave Mr. Rein his business card to be contacted as a witness. Mr. Luminais conceded that in his deposition he stated that he was directly behind Mr. Rein rather than a vehicle behind him. Mr. Lumi-nais also testified that he and the other vehicles had been at the stop sign three to five minutes before the accident occurred. He disagreed with Mr. Rein’s testimony that he was 150 feet away at the time of the accident, insisting he was directly behind the vehicle that was behind Mr. Rein’s vehicle. Mr. Luminais insisted that, rather than driving by and handing Mr. Rein a card, he got out of the truck and walked over to the older man in the second vehicle and handed him his card. He conceded, however, that in his deposition he stated that the man in the second vehicle was a man in his “young thirties” driving a Boh Brothers construction truck. He was also unsure whether Mr. Rein’s vehicle was red or blue and thought that it was a Toyota truck.
Mr. Rushton, the insurance investigator, testified that he went to the site of the accident twice in October 2009 to take pictures and measure the crack near the center of the roadway. According to his measurements, if the crack is the lane divider, there is a three inch discrepancy in the lanes on Boston Drive. He conceded that he was not a road engineer and did not know if the street had been modified in the seven intervening months between the accident and his onsite visit to the scene of the accident.
Ms. Fletcher testified that she lived on Boston Drive approximately a block from the accident site for fourteen years prior to the accident, traversing the intersection on a daily basis. On the day of the aeci-dent she was returning home on the 1-10 Service Road, waiting with her blinker on to make the turn onto Boston | (¡Drive. After waiting for a car to pass, she made the turn onto Boston Drive and, as she did so, a truck veered over into her lane and hit her car. As she sat in her car after the impact, someone in the vehicle behind the vehicle that hit her got out and told the driver of the vehicle to pull back into the right lane. Accordingly, the driver of the other vehicle pulled back from her car and “pulled into the lane that the guy told him go get into his lane in front of his truck.” The driver of the second truck, who she subsequently learned was the father of the driver of the vehicle that struck her, began taking photographs after Mr. Rein backed his vehicle back into the proper lane. According to Ms. Fletcher, Mr. Rein veered across the lane into her pathway prior to reaching the intersectional stop sign.
Based on our review of the record, including the testimony of the witnesses, the police report, the deposition testimony of the investigating officers, and the photographs submitted into evidence, we cannot find that there is no reasonable basis for the trial court’s allocation of fault. We must to defer to the factfinder’s credibility assessment and, in this case, Ms. Fletcher testified that Mr. Rein veered into her lane after she made the turn onto Boston Drive. Moreover, although Mr. Rein and Mr. Lu-minais both insisted that Mr. Rein was at the stop sign at the moment of impact, their trial testimony is inconsistent with both the police report and their own deposition testimony. Accordingly, we find no merit in this assignment of error. Assignment of Error II
The defendants argue that the trial court erred in not allowing the testimony of Mr. Rein’s father, William, to be introduced into the record. The trial court did allow his testimony to be part of the rec *1084 ord because he was not listed as a witness in discovery. The appellants argue that this was error because they listed as |7witnesses “any other witnesses” in the answers to the plaintiffs interrogatories and that the plaintiffs attorney had been aware of William Rein as a prospective witness since his son’s deposition in October 2009.
A trial judge is given great discretion in deciding whether to receive or refuse the offered testimony of witnesses and any bias must be in favor of receiving the testimony. In this case, the proffered testimony of William Rein merely corroborates the testimony of his son and Mr. Luminais. Thus, even if the trial court abused its discretion in not allowing William Rein to testify, his testimony is redundant and does not undermine the fact that Ms. Fletcher’s testimony provides a reasonable basis for the trial court’s allocation of fault. Accordingly, while there is some merit to this assignment of error, any error committed was harmless. Conclusion
The judgment of the trial court is affirmed.
AFFIRMED.

. Inexplicably, the plaintiff/appellee’s brief states that the accident occurred on March 4, 2009, in Baton Rouge, Louisiana.