TERRI F. LOVE, Judge.
h State Farm appeals the trial court’s finding that the decedent’s primary residence was with its insured at the time of death. According to the testimony, the decedent resided with the insured, which would provide insurance coverage for the decedent pursuant to the insured’s uninsured motorist coverage with State Farm. However, State Farm produced documentary evidence that the decedent utilized addresses other than the insured’s for voting, identification, and employment records. The trial court found the testimony credible as to the decedent’s residence due to her lifestyle and found that the decedent resided with the insured. For the reasons that follow, we do not find that the trial court committed manifest error in *681 finding that the decedent resided primarily with the insured and affirm.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Valerie Molette died from injuries received from a single vehicle motorcycle accident. The motorcycle was operated by Charles Green and owned by Ellwood Pleasant, both of whom were uninsured. Arsceola Molette Davis filed a petition for damages on behalf of two of Ms. Molette’s minor children, Zaire Ali Rose and Coreion I. Jena Molette, against Mr. Green, State Farm Automobile Insurance Company (“State Farm”), ABC Insurance Company, and Mr. Pleasant. The [ 2petition was amended to add Paula Honoré as a plaintiff on behalf of Ms. Molette’s third minor child, Uniqué Honoré. Louis Davis, Jr., Ms. Molette’s stepfather, was insured by State Farm with a policy of uninsured/un-derinsured motorist insurance with limits of $100,000 each person/$300,000 each accident.
The Plaintiffs filed a motion for partial summary judgment, which was followed by State Farm’s motion for summary judgment and opposition. State Farm alleged that Ms. Molette did not reside in Mr. Davis’ household and was, therefore, not covered by his insurance policy. The trial court denied the Plaintiffs’ motion for summary judgment, but granted State Farm’s motion for summary judgment and dismissed the claims with prejudice. After the trial court denied a motion for new trial, the Plaintiffs appealed. This Court reversed the trial court and remanded for further proceedings finding that the trial court erred because genuine issues of material fact existed as to whether Ms. Mol-ette was a resident of Mr. Davis’ household for insurance purposes.
On remand, and following a bench trial, the trial court found that Ms. Molette was insured under Mr. Davis’ policy with State Farm in effect at the time of the accident and ordered State Farm to pay $100,000 to the minor children. The award was to be divided equally and included judicial interest from the date of judicial demand and all costs. State Farm’s appeal followed.[1]
State Farm contends that the trial court committed manifest error by finding that Ms. Molette primarily resided with Mr. Davis and by finding that Ms. Molette was covered by State Farm’s insurance policy.

STANDARD OF REVIEW

| ¡Appellate courts review findings of fact using the clearly wrong/manifestly erroneous standard of review. Chimneywood Homeowners Ass’n, Inc. v. Eagan Ins. Agency, Inc., 10-0368, p. 5 (La.App. 4 Cir. 2/2/11), 57 So.3d 1142, 1146. During review, we “must find from the record that there is a reasonable factual basis for the finding of the trial court” and “that the record establishes the finding is not clearly wrong or manifestly erroneous.” Ardoin v. Firestone Polymers, L.L.C., 10-0245, p. 6 (La.1/19/11), 56 So.3d 215, 219. Once the review is completed, “[i]f the trial court’s findings are reasonable in light of the record reviewed in its entirety, the appellate court may not reverse.” Id. The trial court also has a “better capacity to evaluate live witnesses as compared to our access only to a cold record, as well as the proper allocation of trial and appellate functions between the *682 respective courts.” Fletcher v. Rein, 10-1095, p. 3 (La.App. 4 Cir. 1/19/11), 56 So.3d 1080, 1082. Thus, “when there are two permissible views of the evidence, the fact-finder’s choice between them cannot be manifestly erroneous.” Ardoin, 10-0245, p. 6, 56 So.3d at 219.

PRIMARY RESIDENCE

State Farm asserts that the trial court committed manifest error by finding that Ms. Molette resided with Mr. Davis at the time of her death because despite the testimony, none of the documentary evidence proves she resided with Mr. Davis.
Mr. Davis’ insurance policy included the following pertinent language regarding uninsured motor vehicle coverage:
UNINSURED MOTOR VEHICLE-COVERAGE U Who Is an Insured— Coverages U and UEO
Insured — means the person or persons covered by uninsured motor vehicle coverage or “economic-only” uninsured motor vehicle coverage.
This is:
|41. the first person named in the declarations;
2. his or her spouse;
3. their relatives
(Emphasis in original). It is undisputed that Ms. Molette was not a named insured, nor was she the insured’s spouse. Thus, Ms. Molette was covered by State Farm if she was considered a relative of Mr. Davis by the insurance policy. Mr. Davis’ insurance policy’s pertinent definition of a relative was a “person related to you or your spouse by blood, marriage or adoption who resides primarily with you.” (Emphasis in original).
“Whether a person is or is not a resident of a household is a question of law as well as fact that is to be determined from all the facts of each case.” Prudhomme v. Imperial Fire & Cas. Ins. Co., 95-1502, p. 3 (La.App. 3 Cir. 4/3/96), 671 So.2d 1116, 1118; see also Berryhill v. Entergy New Orleans Inc., 05-0005 (La. App. 4 Cir. 8/3/05), 925 So.2d 12. “The intention of a person to be a resident of a particular place is determined by his expressions at a time not suspicious, and his testimony, when called on, considered in the light of his conduct and the circumstances of his life.” Id. “Although residency is dependent on the facts of each case, the principal test is physical presence with the intention to continue living there.” Id., 95-1502, p. 3, 671 So.2d at 1119.
Dwayne Franklin, Mr. Davis’ younger brother, testified that Mr. Davis asked him to move Ms. Molette from her Chalmette address to Mr. Davis’ household. Mr. Franklin thought that Ms. Molette moved after Mr. Davis married her mother, but he was “not really sure.” However, Mr. Franklin was certain that Ms. Molette was living with Mr. Davis at the time of her death. Mr. Franklin also stated that he was told that Ms. Molette would be “staying there.”
|fiCoreion, Ms. Molette’s fourteen year-old daughter at the time of trial, testified that Ms. Molette moved in with her at Mr. Davis’ household a few months before Mr. Davis and Mrs. Davis’ wedding on December 25, 2003. She stated that Ms. Molette was living there at the time of the wedding, was living there when she died, and did not reside anywhere else between the time of the wedding and her death.
On cross-examination, State Farm tried to demonstrate inconsistencies in Coreion’s statement because she stated in her deposition that her mother moved in one month before death. However, Coreion thought that her current testimony had to be correct because she remembers Ms. Molette walking her to school. Coreion also stated that she did not think she understood the *683 questions during the deposition. Upon being questioned about her mother receiving mail at Mr. Davis’ household, Coreion testified that Ms. Molette received Coreion’s report cards at Mr. Davis’ address.
Mrs. Davis, Ms. Molette’s mother, testified that Ms. Molette moved into Mr. Davis’ household before the wedding and was residing there when she died. Mrs. Davis further stated that Ms. Molette did not live anywhere else between the wedding and her death. Mrs. Davis provided Ms. Molette’s address for her death certificate.
On cross-examination, Mrs. Davis testified that Ms. Molette was allegedly involved in criminal activity and had pending court dates at the time of her death. Ms. Davis also believed that Ms. Molette was using the older Chalmette address in order to receive food stamps even though defense counsel presented an affidavit from the Department of Social Services stating that Ms. Molette never received |fiany social services.[2] Further, Mrs. Davis stated that she does not know why her daughter used the Chalmette address for her Louisiana identification card because she was living in Mr. Davis’ household. Mrs. Davis also testified that Ms. Molette was living in Mr. Davis’ household while working for Checkers/Rally’s and does not know why Ms. Molette would not list Mr. Davis’ household as her address.
Tyrrell Molette,[3] Ms. Molette’s brother, testified in his deposition that Ms. Molette was living in Mr. Davis’ household at the time of her death. He stated that Ms. Molette moved into Mr. Davis’ household in November or December of 2003, and that he helped her move. Although Mr. Molette believes that Ms. Molette placed some items in storage when she moved into Mr. Davis’ household, she did not have belongings in Chalmette when she died. Lastly, Mr. Molette thought that Ms. Mol-ette was receiving mail at Mr. Davis’ household, but he was unsure as to mail at any other addresses.
Mr. Davis[4] testified in his deposition that Ms. Molette moved into his household, from Chalmette, in December 2003 and lived there at the time of her death. He stated that his brother, Mr. Franklin, helped Ms. Molette move in and that she never moved out before she died.
State Farm presented documentary evidence to refute the Plaintiffs’ testimonial evidence that Ms. Molette resided in Mr. Davis’ household at the time of her death. The Department of Public Safety and Corrections Identification records for Ms. Molette indicated that she utilized her Chalmette address and the family’s older address on General Meyer Avenue. The records from Checkers/Rally’s, where Ms. Molette was employed when she died, contained the older General Meyer Avenue address. The Registrar of Voters records included |7Ms. Molette’s Chalmette address as well as the General Meyer Avenue address. Case documents from St. Bernard Parish reflected that Ms. Molette resided at the Chalmette address. Lastly, the police report of the accident lists Chal-mette as Ms. Molette’s address.
The trial court judge stated:
[cjlearly this is a credibility call. You were quite open in your questioning. The question is, does the Court find, as we discussed in chambers, that this testimony is contrived or stretched for the *684 purpose of establishing a primary residence or is it simply a lifestyle which lended — loaned or lends itself to — not the structure that we might imagine for some people.
I will look at it, I will look at all the documents....
The trial court judge weighed the testimony and the documentary evidence presented. State Farm alleged that there were inconsistencies in Coreion’s statements regarding when her mother moved in; however, Coreion consistently testified that Ms. Molette was living with Mr. Davis at the time of her death. Given the conflicting documentary evidence and the abundant testimony of Mr. Davis, Mrs. Davis, Mr. Franklin, Mr. Molette, and Coreion supporting the contention that Ms. Mol-ette’s intention was to reside with Mr. Davis when she died, we do not find that the trial court committed manifest error.

DECREE

For the above mentioned reasons, we find that the trial court did not manifestly err by finding that Ms. Molette primarily resided with Mr. Davis at the time of her death and affirm.
AFFIRMED

. State Farm was originally granted a suspen-sive appeal. However, State Farm filed an ex parte consent motion to convert suspensive appeal to devolutive appeal, which was granted. The Plaintiffs also filed a motion to dismiss appeal with this Court seeking to convert the appeal. This Court also granted the motion and converted State Farm’s suspensive appeal to a devolutive appeal.

. This Court notes that the affidavit also states that records were destroyed during Hurricane Katrina.

. Mr. Molette’s deposition was submitted during the bench trial.

.Mr. Davis passed away prior to the bench trial and his deposition was submitted into the record.